# Exhibit A



**Teague I. Donahey**
**Partner**
**Phone** 208.383.3988
tidonahey@hollandhart.com

August 5, 2022

**VIA ELECTRONIC DELIVERY**

Honorable Katherine M. Hiner
Acting Secretary to the Commission
U.S. International Trade Commission
500 E Street SW, Room 112
Washington, DC 20436

Re:   **In the Matter of Certain Pillows and Seat Cushions, Components Thereof,
and Packaging Thereof; Inv. No. 337-TA-____**

Dear Acting Secretary Hiner:

Enclosed for filing please find documents in support of a request by Purple Innovation, LLC ("Purple" or "Complainant") that the U.S. International Trade Commission institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, concerning certain pillows, seat cushions, components thereof, and packaging thereof. Complainant's submission includes the following documents[1]:

1.   One (1) electronic copy of the Complaint Under Section 337 of the Tariff Act of 1930, As Amended.

2.   One (1) electronic copy of the public Exhibits pursuant to Commission Rule 210.8(a)(1)(i) and 201.12(a)(9).

3.   A letter and certification requesting confidential treatment for the information contained in Confidential Exhibits 60C, 62C, and 64C to the Complaint, pursuant to Commission Rules 201.6(b) and 210.5(d).

4.   One (1) electronic copy of unredacted Confidential Exhibits 60C, 62C, and 64C pursuant to Commission Rules 201.6(c) and 210.8(a)(1)(ii).

5.   One (1) electronic copy of the Appendices to the Complaint, including the following documents:

---

[1] Consistent with the Commission's March 19, 2020 Notice entitled "Temporary Change to Filing Procedures," 85 Fed. Reg. 157798, Complainant is not filing this Complaint with any paper copies, CD-ROMs, or other physical media.

T 208.342.5000    F 208.343.8869
800 W. Main Street, Suite 1750, Boise, ID 83702-5974
P.O. Box 2527, Boise, ID 83701-2527
www.hollandhart.com

Alaska      Montana      Utah
Colorado    Nevada       Washington, D.C.
Idaho       New Mexico   Wyoming

# HOLLAND&HART.

August 5, 2022
Page 2

      a.      Certified copies of each of the Asserted Patents and Asserted Registered Trademarks, pursuant to Commission Rules 201.12(a)(9)(i) and (d).

      b.      Certified copies of the prosecution histories for each of the Asserted Patents and Asserted Registered Trademarks, pursuant to Commission Rules 210.12(c)(1) and (d).

      c.      Copies of the Technical References cited in the prosecution histories for each of the Asserted Patents, pursuant to Commission Rule 210.12(c)(2).

      d.      Certified copies of the recorded assignments for each of the Asserted Patents and Asserted Registered Trademarks, pursuant to Commission Rule 210.12(a)(9)(ii).

6.      A Statement on the Public Interest regarding the remedial orders sought by Complainants in the Complaint, pursuant to Commission Rule 210.8(b).

Please contact me with any questions regarding this filing.

Respectfully Submitted,

*/s/Teague I. Donahey*

Teague I. Donahey
Partner
of Holland & Hart LLP

TID:njh

18198156_v1



**Teague I. Donahey**
**Partner**
**Phone** 208.383.3988
**Fax** 208.473.2976
tidonahey@hollandhart.com

August 5, 2022

**VIA ELECTRONIC DELIVERY**

Honorable Katherine M. Hiner
Acting Secretary to the Commission
U.S. International Trade Commission
500 E Street SW, Room 112
Washington, DC 20436

      **Re:**    **In the Matter of Certain Pillows and Seat Cushions, Components Thereof,**
                **and Packaging Thereof; Inv. No. 337-TA-____**

Dear Acting Secretary Hiner:

      Pursuant to Commission Rule 201.6, Complainant Purple Innovation, LLC ("Purple" or "Complainant") respectfully request confidential treatment of certain confidential business information contained in the Verified Complaint and in certain confidential exhibits to the Verified Complaint.

      The information for which Complainant seek confidential treatment is as follows:

- Confidential Exhibit 60C (List of Licensees to U.S. Trademark Registration No. 5,661,556):  contains confidential business information related to the identity of entities that Purple has licensed under a certain trademark

- Confidential Exhibit 62C (List of Licensees to U.S. Trademark Registration No. 6,551,053):  contains confidential business information related to the identity of entities that Purple has licensed under a certain trademark

- Confidential Exhibit 64C (Declaration of George Ulrich):   contains confidential business information related to Purple's internal business operations and finances

      The preceding information qualifies as confidential business information under Commission Rule 201.6 because substantially-identical information is not available to the public, because the disclosure of this information would cause substantial competitive harm to Complainant, and because the disclosure of this information would likely impede the Commission's efforts and ability to obtain similar information in the future.

T 208.342.5000   F 208.343.8869
800 W. Main Street, Suite 1750, Boise, ID 83702-5974
P.O. Box 2527, Boise, ID 83701-2527
www.hollandhart.com

| Alaska | Montana | Utah |
| Colorado | Nevada | Washington, D.C. |
| Idaho | New Mexico | Wyoming |



August 5, 2022
Page 2

     Thank you for your attention.  Please contact me with any questions regarding this request for confidential treatment.

Respectfully Submitted,

*/s/Teague I. Donahey*

Teague I. Donahey

Counsel for Complainant Purple Innovation, LLC

TID:njh

17591112_v1

**UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.**

In the Matter of

CERTAIN PILLOWS AND SEAT
CUSHIONS AND COMPONENTS
THEREOF

Investigation No. 337-TA-____

## **CERTIFICATION**

I, Teague I. Donahey, counsel for Complainant Purple Innovation, LLC ("Purple")

declare:

1.      I am duly authorized by Purple to execute this certification.

2.      I have reviewed Purple's Complaint and the unredacted versions of Confidential

Exhibits 60C, 62C, and 64C for which confidential treatment has been requested

3.      To the best of my knowledge, information, and belief, founded after reasonably

inquiry, substantially identical information is not available to the public.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct, and that the statements made upon information and belief are

believed by me to be true.

Executed this 5th day of August, 2022, in Boise, Idaho.

*/s/Teague I. Donahey*
Teague I. Donahey

17585482_v1

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

| | |
|---|---|
| In the Matter of | Investigation No. 337-TA-\_\_\_\_ |
| CERTAIN PILLOWS AND SEAT CUSHIONS, COMPONENTS THEREOF, AND PACKAGING THEREOF | |

**COMPLAINANT PURPLE INNOVATION, LLC'S**
**PUBLIC INTEREST STATEMENT**

Pursuant to Commission Rule 210.8(b), Complainant Purple Innovation, LLC ("Purple") hereby submits this separate statement regarding the public interest in support of the remedial orders it seeks against the Proposed Respondents identified in the Complaint.

Through this investigation, Purple seeks a general exclusion order barring the importation into the United States, sale for importation into the United States, and sale after importation into the United States of certain pillow and seat cushion articles, components thereof, and packaging thereof, that infringe the Purple Trade Dress, the asserted design patent (U.S. Patent No. D909,092), one of the asserted utility patents (U.S. Patent No. 10,772,445), and/or the asserted trademarks (U.S. Trademark Reg. Nos. 5,661,556 and 6,551,053).[1]  In addition to a general exclusion order, Purple seeks a limited exclusion order forbidding the importation into the United States, sale for importation into the United States, and sale after importation into the United States of all pillow and seat cushion articles of the Proposed Respondents which infringe Purple's other asserted utility patent (U.S. Patent No. 10,863,837).  Finally, Purple requests cease and desist

---

[1] Should the Commission decline to issue a general exclusion order, Purple has requested that the Commission issue alternative relief in the form of a limited exclusion order barring entry into the United States of the same pillow and seat cushion articles, and/or components thereof, of the Proposed Respondents.

1

orders prohibiting the Proposed Respondents from engaging in further conduct that violates 19 U.S.C. § 1337.

As explained herein, Purple's requested remedies will have no negative impact on "the public health and welfare in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, or United States consumers." 19 U.S.C. § 1337(b). The accused products represent a small subset of the overall U.S. pillow and seat cushion markets. Moreover, any temporary decline in the availability of pillows and seat cushions that might result from the Commission's issuance of the relief sought would be easily remedied by the diverse field of suppliers selling a wide variety of non-infringing pillows and seat cushions to U.S. consumers. The readily-available, non-infringing products are comparable to the accused products but do not implicate Purple's intellectual property rights. Because issuing Purple's requested relief will promote, rather than undermine, the public interest, the Commission should institute an investigation without first directing the Administrative Law Judge to make a recommended determination concerning the public interest.

## I.    HOW THE ACCUSED PRODUCTS ARE USED IN THE UNITED STATES

The accused products are pillows and seat cushions that U.S. consumers use to provide support and pressure relief for the human body. The pillows and pillow components provide head and neck support to the user while sleeping or otherwise lying down. Similarly, the seat cushions and seat components provide support and pressure relief while a user is sitting.

## II.    THE REQUESTED REMEDIAL ORDERS POSE NO PUBLIC HEALTH, SAFETY, OR WELFARE CONCERNS

The remedial orders that Purple seeks, if issued by the Commission, will not raise any public health, safety, or welfare concerns. The accused products are not medical or health devices, nor are they otherwise essential to the public health or welfare. Further, there are no health or

safety features unique to the Proposed Respondents' pillows and seat cushions. If the Commission excludes the accused products from the United States, U.S. consumers will continue to have access to a wide variety of non-infringing pillows and seat cushions.

### III.   COMPLAINANTS AND THIRD PARTIES MAKE LIKE OR DIRECTLY COMPETITIVE ARTICLES THAT COULD REPLACE EXCLUDED ACCUSED PRODUCTS

The market for pillows and seat cushions in the United States includes a diverse field of participants that directly compete with the Proposed Respondents.[2] Numerous suppliers, including Purple, Intellibed, Therapedic, Casper, Bedgear, Ghostbed, and Tempur-Sealy, among many others, sell to U.S. consumers pillows in direct competition with the Proposed Respondents. Similarly, Purple, Egg Sitter, Comfilife, and Tempur-pedic are just four of the many suppliers that sell seat cushions comparable to the accused products to U.S. consumers. If the Commission grants Purple's requested remedial orders and excludes the accused products, any resulting shortfall in the availability of supportive pillows and seat cushions would be easily remedied by these and other non-infringing companies who offer similar pillows and seat cushions for sale in the United States. The Commission has previously recognized that the exclusion of infringing products does not harm the public interest where, as here, substitute products are readily available in the United States, and the accused products are manufactured overseas. *See Certain Digit. Televisions & Certain Prods. Containing Same & Methods of Using Same*, Inv. No. 337-TA-617, 2009 ITC LEXIS 2465, at *24 (Apr. 23, 2009).

---

[2] *See, e.g.*, Compl. Ex. 37, Kendall Cornish, *The Best Pillows You Can Buy Right Now*, Apartment Therapy (Sept. 20, 2021); Compl. Ex. 12, Jordan Bowman, *The Best Seat Cushions for Keeping Your Butt Comfy While WFH*, New York Magazine (Jan. 28, 2022).

## IV. COMPLAINANTS AND THIRD PARTIES HAVE THE CAPACITY TO REPLACE THE VOLUME OF ARTICLES SUBJECT TO REMEDIAL ORDERS WITHIN A COMMERCIALLY REASONABLE TIME

Issuing the remedial orders that Purple seeks would not harm the public interest because the market contains an adequate supply of competitive or substitute pillows and seat cushions to replace the accused products.  In addition to the directly competing suppliers listed above, there are hundreds of other suppliers that are prepared to supply U.S. consumers with products that have the same or similar functionality as those offered by the Proposed Respondents.[3]  Issuance of an exclusion order does not implicate public interest concern where there are numerous alternatives to the product at issue that do not infringe the Complainant's patents or trademarks, "and the presence of many domestic manufacturers assures continued competition in the U.S. marketplace and an adequate supply of [the product at issue] to U.S. consumers." *Certain EPROM, EEPROM, Flash Memory, and Flash Microcontroller Semiconductor Devices, and Prods. Containing Same*, Inv. No. 337-TA-395, 2001 ITC LEXIS 989, at *223 (Feb. 2001).

## V. THE REQUESTED REMEDIAL ORDERS WOULD MINIMALLY IMPACT CONSUMERS

Consumers will not experience any negative impact if the Commission issues Purple's requested remedial orders.  Because hundreds of suppliers of pillows and seat cushions have the capacity to immediately fill any void created by the exclusion of the accused products, consumers will continue to have a wide variety of pillows and seat cushions available to them.  Moreover, there is a "strong public interest in enforcing intellectual property rights," *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips,*

---

[3] *See, e.g.*, Press Release, Int'l Sleep Prods. Ass'n, Jan. 21, 2016 (referencing "nearly 700 mattress manufacturers and suppliers throughout the world" represented by ISPA), *available at* https://sleepproducts.org/2016/01/record-number-of-exhibitors-and-show-floor-space-will-make-ispa-expo-2016-the-largest-in-events-history/; *see also supra* at 3.

*and Products Containing Same, Including Cellular Telephone Handsets*, Inv. No. 337-TA-543, 2007 ITC LEXIS 621, *219 (June 19, 2007), that in this case cuts strongly in favor of issuing the remedial orders.

## VI.   **CONCLUSION**

Purple's requested remedies do not implicate public interest concerns.   Indeed, the only potential danger to the public interest implicated by this investigation is the continued absence of the requested relief, which is undermining Purple's U.S. intellectual property rights. *See id.*   The Commission should accordingly should issue a general exclusion order, limited exclusion order, and cease and desist orders if it determines that the Proposed Respondents have violated Section 337.

Dated:  August 5, 2022                                      Respectfully submitted,


                                                            */s/Teague I. Donahey*
                                                            Teague I. Donahey
                                                            Christopher C. McCurdy
                                                            Zachery J. McCraney
                                                            HOLLAND & HART LLP
                                                            800 West Main Street, Suite 1750
                                                            Boise, Idaho 83702
                                                            Tel: (208) 342-5000

                                                            Timothy Getzoff
                                                            HOLLAND & HART LLP
                                                            1800 Broadway, Suite 300,
                                                            Boulder, Colorado 80302
                                                            Tel: (303) 473-2700

                                                            Paul D. Swanson
                                                            Anna C. Van de Stouwe
                                                            HOLLAND & HART LLP
                                                            555 17th Street, Suite 3200
                                                            Denver, Colorado 80202
                                                            Tel: (303) 295-8000

                                                            Counsel for Complainant
                                                            PURPLE INNOVATION, LLC

## UNITED STATES INTERNATIONAL TRADE COMMISSION
## WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>CERTAIN PILLOWS AND SEAT CUSHIONS, COMPONENTS THEREOF, AND PACKAGING THEREOF | Investigation No. 337-TA-____ |

## COMPLAINT UNDER SECTION 337
## OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANT**

Purple Innovation, LLC
4100 North Chapel Ridge Road, Suite 200
Lehi, Utah 84043

**COUNSEL FOR COMPLAINANTS**

Teague I. Donahey
Christopher C. McCurdy
Zachery J. McCraney
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Boise, Idaho 83702
Tel: (208) 342-5000

Timothy Getzoff
HOLLAND & HART LLP
1800 Broadway, Suite 300,
Boulder, Colorado 80302
Tel: (303) 473-2700

Paul D. Swanson
Anna van de Stouwe
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, Colorado 80202
Tel: (303) 295-8000

**PROPOSED RESPONDENTS**

Bedmate-U Co., Ltd.
123, Sindae-gil, Gonjiam-eup
Gwangju-si, Gyeonggi-do
Republic of Korea 12801

Chuang Fan Handicraft Co., Ltd.
598 Zhengsong Avenue, Wanquan, Pingyang
Wenzhou, Zhejiang
China 325409

Dongguan Bounce Technology Co., Ltd.
No. 10, Development Road, Mowu Village
Qishi Town
Dongguan, Guangdong
China

Dongguan Jingrui Silicone Technology Co.,
Ltd.
2-5-301, Niushan Ind. Road, Dongcheng
Street
Dongguan, Guangdong
China 523128

Foshan Dirani Design Furniture Co., Ltd.
RA-3-026A, 3rd Floor, Bldg. A
Jiabocheng No. 189, Middle Foshan Avenue
Foshan, Guangdong
China 528000

Global Ocean Trading Co. Ltd.
Room 201, 2nd Floor
No. 1 Renmin North Road
Longjiang Community, Longjiang Town
Shunde
Foshan, Guangdong
China 528318

Guang An Shi Lin Chen Zai Sheng Wuzi Co.
Ltd.
No. 752, Xianzhu Road, Xianyan Street,
Ouhai
Wenzhou, Zhejiang
China 325000

Guang Zhou Wen Jie Shang Mao Youxian
Gongsi Co., Ltd.
Room 102, No. 15, Lane 111, Yusheng Road
Chenjia, Chongming, Shanghai
China 202162

Guangzhou Epsilon Import and Export Co.,
Ltd.
Room 231, 2/F, Building 10, No. 1, Erheng
Road
West District Hebian Tongda Creative Park,
Helong Street
Guangzhou, Guangdong
China 510000

Guangzhoushi Baixiangguo Keji Youxian
Gongsi Co., Ltd.
Fengze Dong Lu 106 Hao, Zi Bian 1 Hao Lou
X1301-B5235, Nansha
Guangzhou, Guangdong
China 511458

Haircrafters LLC
7022 Shallowford Road, Suite 1, Unit #532
Chattanooga, TN 37421-6714

Hangzhou Lishang Import & Export Co., Ltd.
Room 423, South District
Zhejiang Newspaper Printing
No. 38 Xiangyuan Road
Gongshu
Hangzhou, Zhejiang
China 310015

Hangzhou Lydia Sports Goods Co., Ltd.
Rooms 201 and 202, Building 1, Jinjishan
Village, Suoqian Town, Xiaoshan
Hangzhou, Zhejiang
China 312000

Hebei Zeyong Technology Co., Ltd.
North End of Fuqiang Road, Dahu Jingguan
Pengdu Township, Binhu New Area
Hengshui, Hebei
China 053000

Henson Holdings, LLC d.b.a. SelectSoma
112 Tucson Drive
Lafayette, Louisiana 70503

Hetaibao
Hua Ji Zhen, He Lou Xing, Zheng Cun, He
Lou 1 – 1 Hao
Linquan, Anhui
China 236400

Hubei Sheng Bingyi Dianzi Keji Youxian
Gongsi Co. Ltd.
Jiuyuhuangcheng, 6 Zhuang, 3 Danyuan
603 Shi, Xiannvshan Jiedao Tiyuguanlu 288
Hao, Xiaogan
Hanchuan, Hubei
China 431699

Kaifeng Shi Long Ting Qu Chen Yi
Shangmao Youxian Gongsi Co., Ltd.
Room 2002, Unit 2, Building 10, Phase 3
Shenghua City, Fuxing Avenue, Longting
Kaifeng, Henan
China 475000

Lankao Junchang Electronic Commerce Co.,
Ltd.
Daonan New Street
Lankao
Kaifeng, Henan
China

Lei Lei Wang
No. 33, Hou Xiegou, Xiegou Administrative
Village, Tupi Township, Fuyang
Linquan, Anhui
China 236400

Liu Lin Xian Xu Bin Dian Zi Chan Pin Dian
Pingtou Village, Sanjiao, Luliang
Liulin, Shanxi
China 033300

Nanchang Shirong Bao Er Guanggao Youxian
Gongsi Co., Ltd.
3399 Ziyang Avenue, Room 2-035
Underground Commercial Plaza, Building B
Cloud City, Nanchang High-Tech Industrial
Development Zone
Nanchang, Jiangxi
China 330096

Ningbo Bolian Import & Export Co., Ltd.
2-3-8, No. 326 Qianhu Avenue
Dongqian Lake Tourist Resort Zone
Ningbo, Zhejiang
China 315121

Ningbo Minzhou Import & Export Co., Ltd.
Room 4697, Building No. 3, Lane 3, Xijing
Road
Shijingshan District, Airport Road No. 5000,
Shiqi Street
Haishu, Beijing
China 100043

Ruian Ketai Commodity Co., Ltd.
Taitou Village, Xianxia Street
Ruian, Zhejiang
China

Ruian Xiu Yuan Guoji MaoYi Youxian
Gongsi Co., Ltd.
Luofeng, Bashuicun Kangweilu 2 Hao
Tangxia, Ruian
Wenzhou, Zhejiang
China 325000

Shandong Jiu Hui Xinxi Keji Youxian Gongsi
Co., Ltd.
112 Jiefang Road, Chia Tai Times 1204,
Lixia
Jinan, Shangdong
China 250000

Shanxi Chao Ma Xun Keji Youxian Gongsi
Co., Ltd.
Tonggang Road, Chengbei Xinjing
Community Building 1, Building 2, Unit 17B
Xinfu
Xinzhou, Shanxi
China 034000

Shenzhen Baibaikang Technology Co., Ltd.
6B03, West Plant, Floor 6
2, Guangxian Plot, Bagua 3rd Road
Yuanling Street
Shenzhen, Guangdong
China 518029

Shenzhen Leadfar Industry Co., Ltd.
73-E Shatian North Road
Shatian, Kengzi, Pingshan
Shenzhen, Guangdong
China 518122

Shenzhen Shi Chi Yang Wang Luo Ji Shu
Youxian Gongsi Co., Ltd.
No. 2-2, Xili North Road, Belvedere
Community
Xili Street, Shahe Xili 223, Nanshan
Shenzhen, Guangdong
China 518000

Shenzhen Shi Mai Rui Ke Dianzi Shangwu
Co. Ltd.
Matian Street, Xinzhuang Community
Songbai Road and South Ring Road
Intersection
Yitian Holiday House 1, Unit A 1405
Shenzhen, Guangdong
China 518106

Shenzhen Shi Xin Shangpin Dianzi Shangwu
Youxian Gongsi Co., Ltd.
Mingkang Road, Zhangkeng District 2,
58 Building 1178, Longhua
Shenzhen, Guangdong
China 518131

Shenzhen Shi Yan Huang Chu Hai Keji
Youxian Gongsi Co., Ltd.
Minzhi Street, Room 701, Building 25
Shahu Old Village, Longhua
Shenzhen, Guangdong
China 518000

Shenzhen Shi Yuxiang Meirong Yongju
Youxian Gongsi Co. Ltd.
2801 B Zuo, Jingjiyujingyinxiang Er Qi, 5
Hao Niuchanglu, Pinghuan Shequ
Maluan Jiedao, Pingshan
Shenzhen, Guangdong
China 518118

Shenzhen Tianrun Material Co., Ltd.
307, No. 2, Baoyuan 2nd District, Labor
Community, Xixiang Street
Shenzhen, Guangdong
China 518000

Wuhan Chenkuxuan Technology Co., Ltd.
F6, Building 1, SAGE Jishukaifa Center
26 Binhu Road, E. Lake Xin Ji Shu Kai Fa Qu
Wuhan, Hubei
China 430040

Xiao Dawei
Room 402, 4th Floor, No.137, Tongan Park
Industrial Concentration Zone, Tong'an
Xiamen, Fujian
China 361199

Xiao Xiao Pi Fa Shang Mao You Xian Ze
Ren Gongsi Co.
Row 40, Magnetic Kilns, Ningxiang
Zhongyang
Luliang, Shanxi
China 033400

YaRu Wang
No. 3, Southwest Gate Street
Renyan Village, Jicun, Fenyang
Luliang, Shanxi
China 032200

Yiwu Youru E-commerce Co., Ltd.
Dong Da Lu 39, Building One, Jubao Road
Choujiang Street, Yiwu
Jinhua, Zhejiang
China 322000

Zhejiang Xinhui Import & Export Co., Ltd.
No. 148, Xiazhuangli Bingjiang
Hangzhou, Zhejiang
China 310052

Zhou Meng Bo
618, Building 380, Shayuanpu Building
Minzhi, Longhua
Shenzhen, Guangdong
China 51831

## TABLE OF CONTENTS

LIST OF EXHIBITS ............................................................................................................ vii

LIST OF PHYSICAL EXHIBITS .......................................................................................... xxi

LIST OF APPENDICES ...................................................................................................... xxiv

I.     INTRODUCTION ............................................................................................... 1

II.    THE COMPLAINANT PURPLE .................................................................... 7

III.   PROPOSED RESPONDENTS ........................................................................ 7

      A.      Aduken ...................................................................................................... 7

      B.      BBK .......................................................................................................... 8

      C.      Bedmate-U ............................................................................................... 8

      D.      Berklan .................................................................................................... 9

      E.      Bingyee .................................................................................................... 9

      F.      Birtimo .................................................................................................... 10

      G.      Buysigo .................................................................................................... 11

      H.      DAPU ...................................................................................................... 11

      I.      Dirani Design .......................................................................................... 12

      J.      Epsilon/Husdow ...................................................................................... 13

      K.      GWVJYQG .............................................................................................. 14

      L.      Hanchuan ................................................................................................ 15

      M.      Haosduo ................................................................................................... 15

      N.      Helishy .................................................................................................... 16

      O.      HSOAR .................................................................................................... 17

      P.      HSSGGV .................................................................................................. 18

      Q.      JollyPop ................................................................................................... 18

R.    JOOM ........................................................................................... 19

S.    JSGM .......................................................................................... 20

T.    Kinglei ....................................................................................... 20

U.    KJTOC/Fashion Lotus ............................................................. 21

V.    KYSMOTIC ............................................................................... 22

W.    Leadfar ...................................................................................... 23

X.    Liu/Husdow .............................................................................. 23

Y.    MZSSI ....................................................................................... 25

Z.    OMCOZY .................................................................................. 25

AA.    Rongbaor .................................................................................. 26

BB.    Sayouame .................................................................................. 27

CC.    Sbriun ....................................................................................... 28

DD.    SelectSoma ............................................................................... 28

EE.    Shengyang ................................................................................. 29

FF.    Sofa In ...................................................................................... 30

GG.    Suptempo .................................................................................. 30

HH.    TR/Musite ................................................................................. 31

II.    Uknow ....................................................................................... 32

JJ.    WEADDU ................................................................................. 32

KK.    YRDZ ........................................................................................ 33

LL.    YWSHUF .................................................................................. 34

MM.    ZY/Husdow .............................................................................. 34

IV.    THE ASSERTED TRADE DRESS .................................................. 35

V.    THE ASSERTED TRADEMARKS ................................................. 38

A.    U.S. Trademark Registration No. 5,661,556 ...................... 38

B.      U.S. Trademark Registration No. 6,551,053 ...................................... 38

VI.    THE ASSERTED DESIGN PATENT.................................................................. 39

A.      U.S. Patent No. D909,092 .................................................................... 39

1.      Identification and Ownership.................................................... 39

2.      Foreign Counterparts ................................................................ 40

3.      Non-Technical Description........................................................ 40

VII.   THE ASSERTED UTILITY PATENTS ............................................................. 40

A.      U.S. Patent No. 10,772,445.................................................................. 40

1.      Identification and Ownership.................................................... 40

1.      Foreign Counterparts ................................................................ 41

2.      Non-Technical Description........................................................ 41

B.      U.S. Patent No. 10,863,837.................................................................. 42

1.      Identification and Ownership.................................................... 42

2.      Foreign Counterparts ................................................................ 42

3.      Non-Technical Description........................................................ 43

VIII.  THE PRODUCTS AT ISSUE ............................................................................ 43

IX.    RESPONDENTS' UNLAWFUL AND UNFAIR ACTS.................................... 44

A.      General Allegations ............................................................................. 44

1.      Trade Dress Infringement/Unfair Competition (15 U.S.C. § 1125(a))..... 44

2.      Trademark Infringement (15 U.S.C. § 1114)........................... 45

3.      Patent Infringement.................................................................. 46

a.      Design Patent Infringement (35 U.S.C. § 271)........................... 46
b.      Utility Patent Infringement (35 U.S.C. § 271)............................ 47

B.      Specific Allegations ............................................................................ 48

1.      Aduken's Unlawful and Unfair Acts ....................................... 48

2.      BBK's Unlawful and Unfair Acts............................................ 49

3.    Bedmate-U's Unlawful and Unfair Acts ................................. 50

4.    Berklan's Unlawful and Unfair Acts .................................... 51

5.    Bingyee's Unlawful and Unfair Acts .................................... 54

6.    Birtimo's Unlawful and Unfair Acts .................................... 55

7.    Buysigo's Unlawful and Unfair Acts .................................... 56

8.    DAPU's Unlawful and Unfair Acts ...................................... 57

9.    Dirani Design's Unlawful and Unfair Acts ............................. 59

10.   Epsilon/Husdow's Unlawful and Unfair Acts .......................... 61

11.   GWVJYQG's Unlawful and Unfair Acts ................................ 63

12.   Hanchuan's Unlawful and Unfair Acts .................................. 64

13.   Haosduo's Unlawful and Unfair Acts ................................... 65

14.   Helishy's Unlawful and Unfair Acts .................................... 67

15.   HSOAR's Unlawful and Unfair Acts .................................... 68

16.   HSSGGV's Unlawful and Unfair Acts .................................. 69

17.   JollyPop's Unlawful and Unfair Acts ................................... 70

18.   JOOM's Unlawful and Unfair Acts ..................................... 72

19.   JSGM's Unlawful and Unfair Acts ...................................... 73

20.   Kinglei's Unlawful and Unfair Acts .................................... 74

21.   KJTOC/Fashion Lotus's Unlawful and Infringing Acts .............. 76

22.   KYSMOTIC's Unlawful and Unfair Acts ............................... 77

23.   Leadfar's Unlawful and Unfair Acts .................................... 78

24.   Liu/Husdow's Unlawful and Unfair Acts ............................... 80

25.   MZSSI's Unlawful and Unfair Acts ..................................... 81

26.   OMCOZY's Unlawful and Unfair Acts .................................. 82

27.   Rongbaor's Unlawful and Unfair Acts .................................. 83

28.     Sayouame's Unlawful and Unfair Acts ................................... 84

29.     Sbriun's Unlawful and Unfair Acts ...................................... 86

30.     SelectSoma's Unlawful and Unfair Acts ............................... 87

31.     Shengyang's Unlawful and Unfair Acts ................................ 88

32.     Sofa In's Unlawful and Unfair Acts ..................................... 89

33.     Suptempo's Unlawful and Unfair Acts.................................. 90

34.     TR/Musite's Unlawful and Unfair Acts................................. 91

35.     Uknow's Unlawful and Unfair Acts ..................................... 93

36.     WEADDU's Unlawful and Unfair Acts ................................. 94

37.     YRDZ's Unlawful and Unfair Acts ...................................... 96

38.     YWSHUF's Unlawful and Unfair Acts ................................. 97

39.     ZY/Husdow's Unlawful and Unfair Acts .............................. 98

X.     SPECIFIC INSTANCES OF RESPONDENTS' UNFAIR IMPORTATIONS AND SALES ........................................................................................ 100

XI.     HARMONIZED TARIFF SCHEDULE CLASSIFICATIONS .................................... 111

XII.     DOMESTIC INDUSTRY ............................................................... 112

A.     Domestic Industry Under 19 U.S.C. §§ 1337(a)(2)–(3) .................................. 112

     1.     Technical Prong .................................................................. 112

     2.     Economic Prong.................................................................. 116

         a.     Significant Investments in Plant and Equipment in the United States ................................................................... 116

         b.     Significant Employments of Labor and Capital in the United States ................................................................... 116

         c.     Substantial Investments in Engineering and R&D in the United States ................................................................... 117

B.     Domestic Industry Under 19 U.S.C. § 1337(a)(1)(A) ...................................... 117

     1.     A Domestic Industry Exists ................................................. 117

2.  Proposed Respondents' Unfair and Unlawful Acts Have Substantially Injured the Domestic Industry ................................................................ 118

3.  Proposed Respondents' Unfair and Unlawful Acts Threaten to Further Substantially Injure the Domestic Industry ............................................ 119

XIII.  RELATED LITIGATION ............................................................................. 121

XIV.  REQUESTED RELIEF.................................................................................. 121

## LIST OF EXHIBITS

| Exhibit No. | Description |
|:---:|:---|
| 1 | Domestic Industry Claim Charts – U.S. Patent No. D909,092 |
| 2 | Domestic Industry Claim Charts – U.S. Patent No. 10,772,445 |
| 3 | Domestic Industry Claim Charts – U.S. Patent No. 10,863,837 |
| 4 | Exemplary Purple Advertisements:  Purple® Pillow |
| 5 | Exemplary Purple Advertisements:  Purple® Pillow with Adjustable Boosters |
| 6 | Exemplary Purple Advertisements:  Kid Purple® Pillow |
| 7 | Exemplary Purple Advertisements:  Purple® Harmony™ Pillow |
| 8 | Exemplary Purple Advertisements:  Purple® Seat Cushions (Various) |
| 9 | Kendall Cornish, *The Best Pillows You Can Buy Right Now*, Apartment Therapy (Mar. 17, 2022) |
| 10 | Melanie Pinola, *The Best Ergonomic Seat Cushions*, New York Times (Mar. 11, 2022) |
| 11 | Maryn Liles, *The 12 Best Cooling Pillows for a Good Night's Sleep*, Reader's Digest (Jan. 31, 2022) |
| 12 | Jordan Bowman, *The Best Seat Cushions for Keeping Your Butt Comfy While WFH*, New York Magazine (Jan. 28, 2022) |
| 13 | Cynthia Yang, *Please Remain Seated: Purple seat cushion makes the world a softer place*, Pasadena Now (Jan. 26, 2022) |
| 14 | Karthika Gupta & Madison Flager, *Road Trip Essentials to Pack for a Long Drive*, Condé Nast Traveler (Jan. 24, 2022) |
| 15 | James Brains, *The 4 best pillows for neck pain we tested in 2022*, Insider (Jan. 24, 2022) |
| 16 | Gabrielle Hondorp, *8 Best Pillows for Back Sleepers*, Runner's World (Jan. 23, 2022) |
| 17 | Giselle Castro, *The Best Anti-Snore Pillows*, Healthline (Jan. 31, 2022) |
| 18 | Pauline Lacsamana, *The 9 Best Pillows for Side Sleepers*, Hunker (Jan. 12, 2022) |
| 19 | Geraldine Orentas, *The 15 Best Pillows If You Sleep on Your Back*, Hunker (Jan. 12, 2022) |
| 20 | Lesley Chen, *Spinal Surgeons and Chiropractors Recommend These Pillows if You Suffer From Back Pain*, Well+Good (Dec. 31, 2021) |
| 21 | Zoe Malin, *Work from home:  Most purchased work from home essentials 2021*, NBCNews.com (Dec. 30, 2021) |

| Exhibit No. | Description |
|---|---|
| 22 | Allie Flinn, *The 8 Very Best Sleep Products We Tried This Year*, Well+Good (Dec. 27, 2021) |
| 23 | Korin Miller, *The Best Pillows for Side Sleepers That Balance Support and Comfort*, Forbes (Dec. 22, 2021) |
| 24 | Kelsey Lindsey, *These Were Our Favorite Wellness Products in 2021*, Outside (Dec. 16, 2021) |
| 25 | *Self-care and wellness gifts for everyone on your list*, Fast Company (Dec. 15, 2021) |
| 26 | Korin Miller, *15 Good Pillows That Are Actually Comfortable and Won't Go Flat*, Forbes Vetted (Dec. 7, 2021) |
| 27 | Malia Griggs & Lori Keong, *102 Actually Useful Gifts All Practical People Will Appreciate*, Self (Dec. 2, 2021) |
| 28 | Julia Fields, *The 40 Best Gifts for Women in 2022*, The Spruce (Nov. 23, 2021) |
| 29 | Maggie Griswold, *The Best Latex Pillows to Keep You Comfy and Supported All Night Long*, Cosmopolitan (Nov. 17, 2021) |
| 30 | Kim Duong, *The 15 Best Gifts for Gamers That Aren't a PS5*, Cosmopolitan (Nov. 16, 2021) |
| 31 | Grace Cooper, *I Tried This Super-Plush Pillow, and It's Great for Every Type of Sleeper*, Apartment Therapy (Nov. 11, 2021) |
| 32 | Nancy Dunham, *15 Clever Things That Make Work From Home Life Better*, Newsweek (Nov. 6, 2021) |
| 33 | Jesse Hicks, *The 9 Best Pillows for Every Type of Neck Pain*, Men's Health (Oct. 29, 2021) |
| 34 | Morgan Greenwald, *Work-from-home upgrades:  The ultimate guide for your setup*, NBCNews.com (Oct. 6, 2021) |
| 35 | Corinne Sullivan, *40 Gifts for Lawyers and Law Students That'll Appeal to Anyone*, Cosmopolitan (Oct. 5, 2021) |
| 36 | *The 2021 Men's Health Sleep Awards*, Men's Health (Sept. 23, 2021) |
| 37 | Kendall Cornish, *The Best Pillows You Can Buy Right Now*, Apartment Therapy (Sept. 20, 2021) |
| 38 | Jaclyn Turner & Alice Humphreys, *Best pillows:  9 top options that will transform your sleep*, Homes & Gardens (Sept. 20, 2021) |
| 39 | Candace Davison, *We Tested Purple's Top Pillows, and…We're Very Divided as to Which Is the Best*, PureWow (Sept. 13, 2021) |
| 40 | Daniel Modlin, *This Purple Pillow Never Falls Flat—And I've Never Slept Better*, Daily Beast (Sept. 10, 2021) |

| Exhibit No. | Description |
|---|---|
| 41 | Alyssa Jung, *Introducing Prevention's 2021 Healthy Home Award Winners*, Prevention (Aug. 24, 2021) |
| 42 | Francesca Krempa, *My Boyfriend and I Can't Stop Fighting Over This Pillow, It's Just That Good*, Well+Good (Aug. 9, 2021) |
| 43 | Ash Fisher, *6 Cushions to Stay Seated With*, Healthline (July 19, 2021) |
| 44 | Rachel Kim Raczka, *10 products that will help you sleep cooler at night*, Fast Company (July 16, 2021) |
| 45 | Mili Godio, *The 8 best cooling pillows for summer this year*, NBCNews.com (July 15, 2021) |
| 46 | Rachel Kim Raczka, *Purple's luxury pillow line has changed the way I sleep*, Fast Company (July 6, 2021) |
| 47 | Paige Szmodis, *The 11 Best Pillows for All Sleeping Positions*, Popular Mechanics (July 1, 2021) |
| 48 | Krista Jones, *A Sneak Peek Into Our Editors' Homes:  These Are 33 Products We Actually Own*, PopSugar (July 1, 2021) |
| 49 | Janet Eastman, *Working al fresco:  How to create an outdoor office for the summer*, Seattle Times (July 1, 2021) |
| 50 | Sarah Morlock & Taylor Galla, *My Back Hurt From Sitting at the Office All Day Until I Got a Posture-Correcting Seat Cushion*, Spy (June 8, 2021) |
| 51 | Sage Anderson, *10 Back-to-Office Essentials to Refresh Your In-Person Workspace*, Rolling Stone (June 4, 2021) |
| 52 | Grace Gallagher, *The 32 Best Father's Day Gifts for All the Dads in Your Life*, Romper (June 3, 2021) |
| 53 | Emma Seymour, *Calling All Hot Sleepers:  Cooling Pillows Exist So You Can Always Sleep on the "Cold Side,"* Yahoo!Life (May 25, 2021) |
| 54 | *Good Housekeeping's 2021 Best Bedding Awards*, Good Housekeeping (May 17, 2021) |
| 55 | *40 creative gifts that will delight your mom (or anyone) this Mother's Day*, Fast Company (Apr. 15, 2021) |
| 56 | Mordechai Luchins, *Review:  Purple Kids' Collection—Because Comfort Isn't Just for Adults*, GeekDad (Apr. 2, 2021) |
| 57 | Charlotte Klein, *With These 5 Things (That All Fit in a Tote), I Can Work Ergonomically Anywhere*, New York Magazine (Mar. 9, 2021) |
| 58 | List of Licensees to U.S. Trademark Registration No. 5,661,556 (Public Version) |
| 59 | [Not used] |

| Exhibit No. | Description |
|---|---|
| 60C | List of Licensees to U.S. Trademark Registration No. 5,661,556 (Confidential Version) |
| 61 | List of Licensees to U.S. Trademark Registration No. 6,551,053 (Public Version) |
| 62C | List of Licensees to U.S. Trademark Registration No. 6,551,053 (Confidential Version) |
| 63 | Declaration of George Ulrich (Public Version) |
| 64C | Declaration of George Ulrich (Confidential Version) |
| 65 | Master List of Currently-Accused Products |
| 66 | Chart:  Currently-Accused Products vs. Asserted IP Rights |
| 67 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – BBK |
| 68 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Berklan (Purple Pillow) |
| 69 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Berklan (Purple Kid Pillow) |
| 70 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Berklan (Women's Purple Pillow) |
| 71 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – DAPU (Purple Pillow) |
| 72 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – DAPU (Kids Pillow) |
| 73 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Epsilon/Husdow |
| 74 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Kinglei |
| 75 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Liu/Husdow |
| 76 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – Sofa In |
| 77 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – TR/Musite |
| 78 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – WEADDU |
| 79 | Patent Infringement Claim Charts – U.S. Patent No. D909,092 – ZY/Husdow |
| 80 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – BBK |
| 81 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Berklan (Purple Pillow) |
| 82 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Berklan (Purple Kid Pillow) |
| 83 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Berklan (Women's Purple Pillow) |

| Exhibit No. | Description |
|---|---|
| 84 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – DAPU (Purple Pillow) |
| 85 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – DAPU (Kids Pillow) |
| 86 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Epsilon/Husdow |
| 87 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – GWVJYQG |
| 88 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Haosduo (Cool Summer Neck Cervical Pillow) |
| 89 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Haosduo (Cervical Cool Pillow) |
| 90 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Kinglei |
| 91 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – KJTOC/Fashion Lotus |
| 92 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Leadfar |
| 93 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Liu/Husdow |
| 94 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Sayouame |
| 95 | [Not used] |
| 96 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – Sofa In |
| 97 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – TR/Musite |
| 98 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – WEADDU |
| 99 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – YRDZ (TPE Pectin Pillow) |
| 100 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – YRDZ (Latex Pillow) |
| 101 | Patent Infringement Claim Charts – U.S. Patent No. 10,772,445 – ZY/Husdow |
| 102 | Patent Infringement Claim Charts – U.S. Patent No. 10,863,837 – Bedmate-U |
| 103 | Patent Infringement Claim Charts – U.S. Patent No. 10,863,837 – Berklan |
| 104 | Patent Infringement Claim Charts – U.S. Patent No. 10,863,837 – Dirani Design |
| 105 | Patent Infringement Claim Charts – U.S. Patent No. 10,863,837 – JSGM |
| 106 | Declaration of Tamara Rodriguez |
| 107 | Amazon Webpage Advertising Aduken "Gel Seat Cushion" Products |
| 108 | Amazon Webpage Showing Seller Information for Aduken "Gel Seat Cushion" Product |

| Exhibit No. | Description |
|---|---|
| 109 | Receipt for Purchase of Aduken "Gel Seat Cushion" Product |
| 110 | Photographs of Aduken "Gel Seat Cushion" Product |
| 111 | Alibaba Webpage Advertising BBK "Super Soft Purple Pillow" Product |
| 112 | Alibaba Webpage Showing Seller Information for BBK "Super Soft Purple Pillow" Product |
| 113 | Receipt for Purchase of BBK "Super Soft Purple Pillow" Product |
| 114 | Photographs of BBK "Super Soft Purple Pillow" Product |
| 115 | Indiegogo Webpage Advertising Bedmate-U "FitNek Pillow" Products |
| 116 | Bedmate-U Webpage Showing Seller Information for Bedmate-U "FitNek Pillow" Products |
| 117 | Receipt for Purchase of Bedmate-U "FitNek Pillow" Product |
| 118 | Photographs of Bedmate-U "FitNek Pillow" Product |
| 119 | Amazon Webpage Advertising Berklan "Purple Pillow" Product |
| 120 | Amazon Webpage Showing Seller Information for Berklan "Purple Pillow" Product |
| 121 | Receipt for Purchase of Berklan "Purple Pillow" Product |
| 122 | Photographs of Berklan "Purple Pillow" Product |
| 123 | Amazon Webpage Advertising Berklan "Purple Pillow with Adjustable Booster" Products |
| 124 | Amazon Webpage Showing Seller Information for Berklan "Purple Pillow with Adjustable Booster" Products |
| 125 | Receipt for Purchase of Berklan "Purple Pillow with Adjustable Booster" Product |
| 126 | Photographs of Berklan "Purple Pillow with Adjustable Booster" Product |
| 127 | Amazon Webpage Advertising Berklan "Purple Kid Pillow" Products |
| 128 | Amazon Webpage Showing Seller Information for Berklan "Purple Kid Pillow" Products |
| 129 | Receipt for Purchase of Berklan "Purple Kid Pillow" Product |
| 130 | Photographs of Berklan "Purple Kid Pillow" Product |
| 131 | Amazon Webpage Advertising Berklan "Women's Purple Pillow" Product |
| 132 | Amazon Webpage Showing Seller Information for Berklan "Women's Purple Pillow" Product |
| 133 | Receipt for Purchase of Berklan "Women's Purple Pillow" Product |

| Exhibit No. | Description |
|---|---|
| 134 | Photographs of Berklan "Women's Purple Pillow" Product |
| 135 | Amazon Webpage Advertising Berklan "Purple Harmony Pillow" Product |
| 136 | Amazon Webpage Showing Seller Information for Berklan "Purple Harmony Pillow" Product |
| 137 | Receipt for Purchase of Berklan "Purple Harmony Pillow" Product |
| 138 | Photographs of Berklan "Purple Harmony Pillow" Product |
| 139 | Amazon Webpage Advertising Berklan "Purple Back Pillow" Products |
| 140 | Amazon Webpage Showing Seller Information for Berklan "Purple Back Pillow" Products |
| 141 | Receipt for Purchase of Berklan "Purple Back Pillow" Product |
| 142 | Photographs of Berklan "Purple Back Pillow" Product |
| 143 | Amazon Webpage Advertising Berklan "Purple Seat Cushion" Products |
| 144 | Amazon Webpage Showing Seller Information for Berklan "Purple Seat Cushion" Products |
| 145 | Receipt for Purchase of Berklan "Purple Seat Cushion" Product |
| 146 | Photographs of Berklan "Purple Seat Cushion" Product |
| 147 | Amazon Webpage Advertising Bingyee "Gel Seat Cushion" Products |
| 148 | Amazon Webpage Showing Seller Information for Bingyee "Gel Seat Cushion" Products |
| 149 | Receipt for Purchase of Bingyee "Gel Seat Cushion" Product |
| 150 | Photographs of Bingyee "Gel Seat Cushion" Product |
| 151 | Amazon Webpage Advertising Birtimo "Gel Seat Cushion" Products |
| 152 | Amazon Webpage Showing Seller Information for Birtimo "Gel Seat Cushion" Products |
| 153 | Receipt for Purchase of Birtimo "Gel Seat Cushion" Product |
| 154 | Photographs of Birtimo "Gel Seat Cushion" Product |
| 155 | Amazon Webpage Advertising Buysigo "Purple Gel Seat Cushion" Products |
| 156 | Amazon Webpage Showing Seller Information for Buysigo "Purple Gel Seat Cushion" Products |
| 157 | Receipt for Purchase of Buysigo "Purple Gel Seat Cushion" Product |
| 158 | Photographs of Buysigo "Purple Gel Seat Cushion" Product |
| 159 | Amazon Webpage Advertising DAPU "Purple Pillow" Products |

| Exhibit No. | Description |
|---|---|
| 160 | Amazon Webpage Showing Seller Information for DAPU "Purple Pillow" Products |
| 161 | Receipt for Purchase of DAPU "Purple Pillow" Product |
| 162 | Photographs of DAPU "Purple Pillow" Product |
| 163 | DAPU Website Webpage Advertising DAPU "Kids Pillow" Products |
| 164 | DAPU Website Webpage Showing Seller Information for DAPU "Kids Pillow" Products |
| 165 | Receipt for Purchase of DAPU "Kids Pillow" Product |
| 166 | Photographs of DAPU "Kids Pillow" Product |
| 167 | Amazon Webpage Advertising DAPU "Purple Lumbar Cushion" Products |
| 168 | Amazon Webpage Showing Seller Information for DAPU "Purple Lumbar Cushion" Products |
| 169 | Receipt for Purchase of DAPU "Purple Lumbar Cushion" Product |
| 170 | Photographs of DAPU "Purple Lumbar Cushion" Product |
| 171 | Amazon Webpage Advertising DAPU "Purple Seat Cushion" Products |
| 172 | Amazon Webpage Showing Seller Information for DAPU "Purple Seat Cushion" Products |
| 173 | Receipt for Purchase of DAPU "Purple Seat Cushion" Product |
| 174 | Photographs of DAPU "Purple Seat Cushion" Product |
| 175 | Amazon Webpage Advertising Dirani Design "Purple Pillow" Products |
| 176 | Amazon Webpage Showing Seller Information for Dirani Design "Purple Pillow" Products |
| 177 | Receipt for Purchase of Dirani Design "Purple Pillow" Product |
| 178 | Photographs of Dirani Design "Purple Pillow" Product |
| 179 | Amazon Webpage Advertising Dirani Design "Purple Pillow with Purple Q" Products |
| 180 | Amazon Webpage Showing Seller Information for Dirani Design "Purple Pillow with Purple Q" Products |
| 181 | Receipt for Purchase of Dirani Design "Purple Pillow with Purple Q" Product |
| 182 | Photographs of Dirani Design "Purple Pillow with Purple Q" Product |
| 183 | Alibaba Webpage Advertising Epsilon/Husdow "Honeycomb Hex Latex Pillow" Products |
| 184 | Alibaba Webpage Showing Seller Information for Epsilon/Husdow "Honeycomb Hex Latex Pillow" Products |

| Exhibit No. | Description |
|---|---|
| 185 | Receipt for Purchase of Epsilon/Husdow "Honeycomb Hex Latex Pillow" Product |
| 186 | Photographs of Epsilon/Husdow "Honeycomb Hex Latex Pillow" Product |
| 187 | AliExpress Webpage Advertising GWVJYQG "Purple Waxy Pillow" Product |
| 188 | AliExpress Webpage Showing Seller Information for GWVJYQG "Purple Waxy Pillow" Product |
| 189 | Receipt for Purchase of GWVJYQG "Purple Waxy Pillow" Product |
| 190 | Photographs of GWVJYQG "Purple Waxy Pillow" Product |
| 191 | Amazon Webpage Advertising Hanchuan "Gel Seat Cushion" Products |
| 192 | Amazon Webpage Showing Seller Information for Hanchuan "Gel Seat Cushion" Products |
| 193 | Receipt for Purchase of Hanchuan "Gel Seat Cushion" Product |
| 194 | Photographs of Hanchuan "Gel Seat Cushion" Product |
| 195 | Amazon Webpage Advertising Haosduo "Cervical Curve Pillow" Product |
| 196 | Amazon Webpage Showing Seller Information for Haosduo "Cervical Curve Pillow" Products |
| 197 | Receipt for Purchase of Haosduo "Cervical Curve Pillow" Product |
| 198 | Photographs of Haosduo "Cervical Curve Pillow" Product |
| 199 | Amazon Webpage Advertising Haosduo "Cool Summer Neck Pillow" Products |
| 200 | Amazon Webpage Showing Seller Information for Haosduo "Cool Summer Neck Pillow" Products |
| 201 | Receipt for Purchase of Haosduo "Cool Summer Neck Pillow" Product |
| 202 | Photographs of Haosduo "Cool Summer Neck Pillow" Product |
| 203 | Amazon Webpage Advertising Helishy "Gel Seat Cushion" Products |
| 204 | Amazon Webpage Showing Seller Information for Helishy "Gel Seat Cushion" Products |
| 205 | Receipt for Purchase of Helishy "Gel Seat Cushion" Product |
| 206 | Photographs of Helishy "Gel Seat Cushion" Product |
| 207 | Amazon Webpage Advertising HSOAR "Gel Seat Cushion" Products |
| 208 | Amazon Webpage Showing Seller Information for HSOAR "Gel Seat Cushion" Products |
| 209 | Receipt for Purchase of HSOAR "Gel Seat Cushion" Product |
| 210 | Photographs of HSOAR "Gel Seat Cushion" Product |

| Exhibit No. | Description |
|---|---|
| 211 | Amazon Webpage Advertising HSSGGV "Gel Seat Cushion" Products |
| 212 | Amazon Webpage Showing Seller Information for HSSGGV "Gel Seat Cushion" Products |
| 213 | Receipt for Purchase of HSSGGV "Gel Seat Cushion" Product |
| 214 | Photographs of HSSGGV "Gel Seat Cushion" Product |
| 215 | Amazon Webpage Advertising JollyPop "Purple Gel Seat Cushion" Product |
| 216 | Amazon Webpage Showing Seller Information for JollyPop "Purple Gel Seat Cushion" Product |
| 217 | Receipt for Purchase of JollyPop "Purple Gel Seat Cushion" Product |
| 218 | Photographs of JollyPop "Purple Gel Seat Cushion" Product |
| 219 | Amazon Webpage Advertising JOOM "Purple Gel Seat Cushion" Products |
| 220 | Amazon Webpage Showing Seller Information for JOOM "Purple Gel Seat Cushion" Product |
| 221 | Receipt for Purchase of JOOM "Purple Gel Seat Cushion" Product |
| 222 | Photographs of JOOM "Purple Gel Seat Cushion" Product |
| 223 | Amazon Webpage Advertising JSGM "TPE Material Sleep Pillow" Products |
| 224 | Amazon Webpage Showing Seller Information for JSGM "TPE Material Sleep Pillow" Products |
| 225 | Receipt for Purchase of JSGM "TPE Material Sleep Pillow" Product |
| 226 | Photographs of JSGM "TPE Material Sleep Pillow" Product |
| 227 | Amazon Webpage Advertising Kinglei "Purple Neck Pillow" Products |
| 228 | Amazon Webpage Showing Seller Information for Kinglei "Purple Neck Pillow" Products |
| 229 | Receipt for Purchase of Kinglei "Purple Neck Pillow" Product |
| 230 | Photographs of Kinglei "Purple Neck Pillow" Product |
| 231 | Amazon Webpage Advertising KJTOC/Fashion Lotus "Purple Pillow" Products |
| 232 | Amazon Webpage Showing Seller Information for KJTOC/Fashion Lotus "Purple Pillow" Products |
| 233 | Receipt for Purchase of KJTOC/Fashion Lotus "Purple Pillow" Product |
| 234 | Photographs of KJTOC/Fashion Lotus "Purple Pillow" Product |
| 235 | Amazon Webpage Advertising KYSMOTIC "Purple Gel Seat Cushion" Products |

| Exhibit No. | Description |
|---|---|
| 236 | Amazon Webpage Showing Seller Information for KYSMOTIC "Purple Gel Seat Cushion" Products |
| 237 | Receipt for Purchase of KYSMOTIC "Purple Gel Seat Cushion" Product |
| 238 | Photographs of KYSMOTIC "Purple Gel Seat Cushion" Product |
| 239 | Alibaba Webpage Advertising Leadfar "Gel TPE Grid Pillow" Products |
| 240 | Alibaba Webpage Showing Seller Information for Leadfar "Gel TPE Grid Pillow" Products |
| 241 | Receipt for Purchase of Leadfar "Gel TPE Grid Pillow" Product |
| 242 | Photographs of Leadfar "Gel TPE Grid Pillow" Product |
| 243 | Amazon Webpage Advertising Liu/Husdow "Air Pillow" Products |
| 244 | Amazon Webpage Showing Seller Information for Liu/Husdow "Air Pillow" Products |
| 245 | Receipt for Purchase of Liu/Husdow "Air Pillow" Product |
| 246 | Photographs of Liu/Husdow "Air Pillow" Product |
| 247 | Amazon Webpage Advertising MZSSI "Purple Gel Seat Cushion" Products |
| 248 | Amazon Webpage Showing Seller Information for MZSSI "Purple Gel Seat Cushion" Products |
| 249 | Receipt for Purchase of MZSSI "Purple Gel Seat Cushion" Product |
| 250 | Photographs of MZSSI "Purple Gel Seat Cushion" Product |
| 251 | Amazon Webpage Advertising OMCOZY "Purple Gel Seat Cushion" Products |
| 252 | Amazon Webpage Showing Seller Information for OMCOZY "Purple Gel Seat Cushion" Products |
| 253 | Receipt for Purchase of OMCOZY "Purple Gel Seat Cushion" Product |
| 254 | Photographs of OMCOZY "Purple Gel Seat Cushion" Product |
| 255 | Amazon Webpage Advertising Rongbaor "Gel Seat Cushion" Products |
| 256 | Amazon Webpage Showing Seller Information for Rongbaor "Gel Seat Cushion" Products |
| 257 | Receipt for Purchase of Rongbaor "Gel Seat Cushion" Product |
| 258 | Photographs of Rongbaor "Gel Seat Cushion" Product |
| 259 | Amazon Webpage Advertising Sayouame "Purple Jelly Pillow" Products |
| 260 | Amazon Webpage Showing Seller Information for Sayouame "Purple Jelly Pillow" Products |
| 261 | Receipt for Purchase of Sayouame "Purple Jelly Pillow" Product |

| Exhibit No. | Description |
|:---:|:---|
| 262 | Photographs of Sayouame "Purple Jelly Pillow" Product |
| 263 | Amazon Webpage Advertising Sbriun "Extra Large Gel Seat Cushion" Products |
| 264 | Amazon Webpage Showing Seller Information for Sbriun "Extra Large Gel Seat Cushion" Products |
| 265 | Receipt for Purchase of Sbriun "Extra Large Gel Seat Cushion" Product |
| 266 | Photographs of Sbriun "Extra Large Gel Seat Cushion" Product |
| 267 | Amazon Webpage Advertising SelectSoma "Purple Gel Seat Cushion" Products |
| 268 | Amazon Webpage Showing Seller Information for SelectSoma "Purple Gel Seat Cushion" Products |
| 269 | Receipt for Purchase of SelectSoma "Purple Gel Seat Cushion" Product |
| 270 | Photographs of SelectSoma "Purple Gel Seat Cushion" Product |
| 271 | Amazon Webpage Advertising Shengyang "Gel Breathable Thick Pillow" Products |
| 272 | Amazon Webpage Showing Seller Information for Shengyang "Gel Breathable Thick Pillow" Products |
| 273 | Receipt for Purchase of Shengyang "Gel Breathable Thick Pillow" Product |
| 274 | Photographs of Shengyang "Gel Breathable Thick Pillow" Product |
| 275 | Amazon Webpage Advertising Sofa In "Natural Latex Pillow for Sleeping" Product |
| 276 | Amazon Webpage Showing Seller Information for Sofa In "Natural Latex Pillow for Sleeping" Product |
| 277 | Receipt for Purchase of Sofa In "Natural Latex Pillow for Sleeping" Product |
| 278 | Photographs of Sofa In "Natural Latex Pillow for Sleeping" Product |
| 279 | Amazon Webpage Advertising Suptempo "Gel Seat Cushion" Products |
| 280 | Amazon Webpage Showing Seller Information for Suptempo "Gel Seat Cushion" Products |
| 281 | Receipt for Purchase of Suptempo "Gel Seat Cushion" Product |
| 282 | Photographs of Suptempo "Gel Seat Cushion" Product |
| 283 | Alibaba Webpage Advertising TR/Musite "Home Super Soft Pillow" Products |
| 284 | Alibaba Webpage Showing Seller Information for TR/Musite "Home Super Soft Pillow" Products |
| 285 | Receipt for Purchase of TR/Musite "Home Super Soft Pillow" Product |
| 286 | Alibaba Webpage Advertising TR/Musite "Elastomer Purple Pillow" Products |

| Exhibit No. | Description |
|---|---|
| 287 | Alibaba Webpage Showing Seller Information for TR/Musite "Elastomer Purple Pillow" Products |
| 288 | Receipt for Purchase of TR/Musite "Elastomer Purple Pillow" Product |
| 289 | Alibaba Webpage Advertising TR/Musite "Celebrities Pillow" Products |
| 290 | Alibaba Webpage Showing Seller Information for TR/Musite "Celebrities Pillow" Products |
| 291 | Receipt for Purchase of TR/Musite "Celebrities Pillow" Product |
| 292 | Photograph of Boxes in Which Infringing TR/Musite Pillows Were Shipped |
| 293 | Photograph of Unassembled Boxes Shipped With Infringing TR/Musite Pillows |
| 294 | Photographs Infringing TR/Musite Pillows |
| 295 | Amazon Webpage Advertising Uknow "Purple Gel Seat Cushion" Products |
| 296 | Amazon Webpage Showing Seller Information for Uknow "Purple Gel Seat Cushion" Products |
| 297 | Receipt for Purchase of Uknow "Purple Gel Seat Cushion" Product |
| 298 | Photographs of Uknow "Purple Gel Seat Cushion" Product |
| 299 | Alibaba Webpage Advertising WEADDU "TPE Pillow" Products |
| 300 | Alibaba Webpage Showing Seller Information for WEADDU "TPE Pillow" Products |
| 301 | Receipt for Purchase of WEADDU "TPE Pillow" Product |
| 302 | Photographs of WEADDU "TPE Pillow" Product |
| 303 | Amazon Webpage Advertising YRDZ "TPE Pectin Pillow" Products |
| 304 | Amazon Webpage Showing Seller Information for YRDZ "TPE Pectin Pillow" Products |
| 305 | Receipt for Purchase of YRDZ "TPE Pectin Pillow" Product |
| 306 | Photographs of YRDZ "TPE Pectin Pillow" Product |
| 307 | Amazon Webpage Advertising YRDZ "Latex Pillow" Products |
| 308 | Amazon Webpage Showing Seller Information for YRDZ "Latex Pillow" Products |
| 309 | Receipt for Purchase of YRDZ "Latex Pillow" Product |
| 310 | Photographs of YRDZ "Latex Pillow" Product |
| 311 | Amazon Webpage Advertising YWSHUF "Gel Seat Cushion" Products |
| 312 | Amazon Webpage Showing Seller Information for YWSHUF "Gel Seat Cushion" Products |

| Exhibit No. | Description |
|---|---|
| 313 | Receipt for Purchase of YWSHUF "Gel Seat Cushion" Product |
| 314 | Photographs of YWSHUF "Gel Seat Cushion" Product |
| 315 | Alibaba Webpage Advertising ZY/Husdow "TPE Gel Pillow" Products |
| 316 | Alibaba Webpage Showing Seller Information for ZY/Husdow "TPE Gel Pillow" Products |
| 317 | Receipt for Purchase of ZY/Husdow "TPE Gel Pillow" Product |
| 318 | Photographs of ZY/Husdow "TPE Gel Pillow" Product |

## LIST OF PHYSICAL EXHIBITS[1]

| Physical Exhibit No. | Description |
|---|---|
| P1 | Purple® Pillow |
| P2 | Purple® Pillow with Adjustable Booster |
| P3 | Kid Purple® Pillow |
| P4 | Purple® Harmony Pillow |
| P5 | Purple® Ultimate Seat Cushion |
| P6 | Purple® Double Seat Cushion |
| P7 | Purple® Royal Seat Cushion |
| P8 | Purple® Simply Seat Cushion |
| P9 | Purple® Portable Seat Cushion |
| P10 | Purple® Foldaway Seat Cushion |
| P11 | Purple® Back Seat Cushion |
| P12 | Aduken Gel Seat Cushion |
| P13 | BBK Super Soft Purple Pillow |
| P14 | Bedmate-U FitNek Pillow |
| P15 | Berklan Purple Pillow |
| P16 | Berklan Purple Pillow with Adjustable Booster |
| P17 | Berklan Purple Kid Pillow |
| P18 | Berklan Women's Purple Pillow |
| P19 | Berklan Purple Harmony Pillow |
| P20 | Berklan Purple Back Pillow |
| P21 | Berklan Purple Seat Cushion |
| P22 | Bingyee Gel Seat Cushion |
| P23 | Birtimo Gel Seat Cushion |
| P24 | Buysigo Purple Gel Seat Cushion |
| P25 | DAPU Purple Pillow |

---

[1] Purple understands that, in light of the ongoing COVID-19-related pandemic, the Commission is not accepting the submission of physical exhibits at this time.  Purple is therefore providing placeholder exhibits for such physical exhibits at this time, but will submit physical exhibits to the Commission upon request.

| Physical Exhibit No. | Description |
|---|---|
| P26 | DAPU Kids Pillow |
| P27 | DAPU Purple Lumbar Cushion |
| P28 | DAPU Purple Seat Cushion |
| P29 | Dirani Design Purple Pillow |
| P30 | Dirani Design Purple Pillow with Purple Q |
| P31 | Epsilon/Husdow Honeycomb Hex Latex Pillow |
| P32 | GWVJYQG Purple Waxy Pillow |
| P33 | Hanchuan Gel Seat Cushion |
| P34 | Haosduo Cervical Curve Pillow |
| P35 | Haosduo Cool Summer Neck Pillow |
| P36 | Helishy Gel Seat Cushion |
| P37 | HSOAR Gel Seat Cushion |
| P38 | HSSGGV Gel Seat Cushion |
| P39 | JollyPop Purple Gel Seat Cushion |
| P40 | JOOM Gel Seat Cushion |
| P41 | JSGM TPE Material Sleep Pillow |
| P42 | Kinglei Purple Neck Pillow |
| P43 | KJTOC/Fashion Lotus Purple Pillow |
| P44 | KYSMOTIC Purple Gel Seat Cushion |
| P45 | Leadfar Gel TPE Grid Pillow |
| P46 | Liu/Husdow Air Pillow |
| P47 | MZSSI Purple Gel Seat Cushion |
| P48 | OMCOZY Purple Gel Seat Cushion |
| P49 | Rongbaor Gel Seat Cushion |
| P50 | Sayouame Purple Jelly Pillow |
| P51 | Sbriun Extra Large Gel Seat Cushion |
| P52 | SelectSoma Purple Gel Seat Cushion |
| P53 | Shengyang Gel Breathable Thick Pillow |
| P54 | Sofa In Natural Latex Pillow for Sleeping |
| P55 | Suptempo Gel Seat Cushion |

| Physical Exhibit No. | Description |
|---|---|
| P56 | TR/Musite Home Super Soft Pillow |
| P57 | TR/Musite Elastomer Purple Pillow |
| P58 | TR/Musite Celebrities Pillow |
| P59 | Uknow Purple Gel Seat Cushion |
| P60 | WEADDU TPE Pillow |
| P61 | YRDZ TPE Pectin Pillow |
| P62 | YRDZ Latex Pillow |
| P63 | YWSHUF Gel Seat Cushion |
| P64 | ZY/Husdow TPE Gel Pillow |

## LIST OF APPENDICES

| Appendix No. | Description |
|:---:|:---|
| A | Certified Copy of U.S. Patent No. D909,092 |
| B | Certified Copy of Prosecution History of U.S. Patent No. D909,092 |
| C | Technical References Cited in Prosecution History of U.S. Patent No. D909,092 |
| D | Certified Copy of the Recorded Assignment(s) for U.S. Patent No. D909,092 |
| E | Certified Copy of U.S. Trademark Registration No. 5,661,556 |
| F | Certified Copy of Prosecution History of U.S. Trademark Registration No. 5,661,556 |
| G | Certified Copy of the Recorded Assignment(s) for U.S. Trademark Registration No. 5,661,556 |
| H | Certified Copy of U.S. Trademark Registration No. 6,551,053 |
| I | Certified Copy of Prosecution History of U.S. Trademark Registration No. 6,551,053 |
| J | Certified Copy of the Recorded Assignment(s) for U.S. Trademark Registration No. 6,551,053 |
| K | Certified Copy of U.S. Patent No. 10,772,445 |
| L | Certified Copy of Prosecution History of U.S. Patent No. 10,772,445 |
| M | Technical References Cited in Prosecution History of U.S. Patent No. 10,772,445 |
| N | Certified Copy of the Recorded Assignment(s) for U.S. Patent No. 10,772,445 |
| O | Certified Copy of U.S. Patent No. 10,863,837 |
| P | Certified Copy of Prosecution History of U.S. Patent No. 10,863,837 |
| Q | Technical References Cited in Prosecution History of U.S. Patent No. 10,863,837 |
| R | Certified Copy of the Recorded Assignment(s) for U.S. Patent No. 10,863,837 |

## I.      INTRODUCTION

1.      Complainant Purple Innovation, LLC ("Purple") respectfully requests that the United States International Trade Commission ("Commission") institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), in order to remedy the unlawful importations, sales for importation, and sales after importation of certain pillows and seat cushions, components thereof, and packaging thereof, that infringe valid and enforceable United States trade dress, trademarks, and patents owned by Purple.

2.      In the 1990s, two brothers, Terry and Tony Pearce, set out to revolutionize the comfort space.  One an expert in manufacturing and design, and the other an advanced aerospace scientist, the brothers put together a dynamic team to create innovative cushioning solutions in the State of Utah.  They soon developed a proprietary gel technology for use in mattresses, pillows, and seat cushions, Hyper-Elastic Polymer®, that is effective at delivering pressure relief and support.

3.      In 2015, the Pearce brothers founded Purple in order to fully commercialize their inventions.  Purple subsequently developed a variety of unique, branded, and premium comfort products, including mattresses, pillows, and seat cushions, using the Pearces' proprietary gelatinous elastomeric polymer technology.  These products have become incredibly popular in the U.S. consumer marketplace, and, to this day, they all continue to be designed and manufactured in the United States at Purple's facilities in Utah and Georgia.

4.      Purple's unique mattresses, pillows, and seat cushions all utilize the same overall product design, or "look-and-feel," that has become distinctive and widely known to consumers in the U.S. marketplace as being associated with Purple.  These mattresses, pillows, and seat cushions utilize an elastomer material that, consistent with Purple's unique and trademarked company name, is uniformly colored purple.  Further, the elastomer material in these mattresses, pillows, and seat

1

cushions is formed into a repeating "grid" pattern of varying shapes.  Purple has valid and enforceable trade dress (hereinafter, "Purple Trade Dress"), trademark, design patent, and utility patent rights associated with these features.

5.      For example, exemplary images of Purple's Purple® Pillow, are shown below:





*See* Exs. 4–5.

2

6.      An exemplary image of the Purple® Harmony™ Pillow is shown below:



*See* Ex. 7.

7.      An exemplary image of Purple's Royal Seat Cushion™ is shown below:



*See* Ex. 8.

8.      As a result of the overwhelming popularity of Purple's products, including specifically its pillows and seat cushions, Purple's business has been expanding rapidly and its revenue growth and profitability has been remarkable.  But with Purple's explosive growth and newfound popularity has come new challenges.  Recently, Purple has become the victim of innumerable "knock-off" products imported into the United States from the People's Republic of China and elsewhere and sold by numerous entities, including the proposed Respondents, through a variety on-line marketing channels such as Amazon.com, Alibaba.com, and the like.  Although

they are made to closely resemble Purple products, these knock-offs are generally of inferior quality and sold at discounted prices relative to Purple's pillows and seat cushions.

9.      As one example of the unfair knock-off problem that Purple is facing, below are marketing images from on-line sources comparing a number of Purple pillow products with corresponding products being sold by proposed Respondent Berklan on Amazon.com:

| Purple Product | Berklan Product |
|---|---|
| Purple® Harmony™ Pillow ($179.00) | "Purple Harmony Pillow" ($76.99) |
|  |  |
| Purple® Pillow (N/A) | "Purple Pillow" ($69.99) |
|  |  |
| Purple® Pillow (with Adjustable Boosters) ($134.00) | "Purple Pillow with Adjustable Boosters" ($75.99) |
|  |  |



| Purple Product | Berklan Product |
|---|---|
| Kid's Purple® Pillow ($79.00) | "Purple Kid Pillow" ($59.99) |

*Compare* Exs. 4–7 *with* Exs. 119, 123, 127, 135.

10.     As set forth in more detail herein, such knock-offs constitute blatant attempts to copy Purple's unique product technology and appearance, to trade off of Purple's significant consumer goodwill, and to deceive consumers into purchasing the knock-off products at a discounted price believing them to be affiliated with Purple.  Proposed Respondents' improper activities constitute unfair competition and trademark infringement under federal law.  They also infringe Purple's United States patents.  Accordingly, Proposed Respondents' importations, sales for importation, and sales after importation of these knock-off products constitute unfair acts within the meaning of Section 337.

11.     In response to these new challenges, Purple has worked vigorously in an effort to enhance its intellectual property portfolio and police its intellectual property rights, all on an international basis.  Because much of the infringing activity has taken place on-line, Purple itself has expended significant resources investigating on-line infringing activities and has repeatedly been forced to issue product "take-down requests" with respect to prominent on-line platforms such as Amazon.  Purple has also sent numerous cease-and-desist letters to infringers.  Purple has also requested website removals through ICANN for infringing website activity using Purple's intellectual property.  But as Purple's business and products have grown more successful, the

infringements have only increased, and Purple has become overwhelmed by the seemingly never-ending volume of infringing activity coming from a variety of often unknown sources overseas.

12.     As just one example of the difficulties Purple has faced in identifying the sources of infringing products, Purple ordered what appeared to be three different infringing pillows from what appeared to be three different Chinese manufacturers:  (A) a "Honeycomb Hex Latex Pillow" from an on-line seller identifying itself as "Epsilon"; (B) an "Air Pillow" from an on-line seller identifying itself as "Liu"; and (C) a "TPE Gel Pillow" from an on-line seller identifying itself as "ZY."  When the products arrived in the United States, it was revealed that these three ostensibly different pillow products were in fact the same pillow product, packaged in identical boxes identifying themselves as "Husdow"-brand pillows, which apparently are manufactured by an entirely different Chinese entity, Chuang Fan Handicraft Co., Ltd.

13.     Through this proceeding, Purple seeks bring this rampant infringing activity to an end.  In particular, Purple seeks a General Exclusion Order ("GEO") pursuant to 19 U.S.C. § 1337(d) excluding from entry all pillow and seat cushion products, components thereof, and packaging thereof, that infringe Purple's trade dress, trademark, and patent rights, as specified in more detail herein.  A GEO is necessary under the circumstances here to prevent circumvention of an exclusion order limited to products of the proposed Respondents, and, in addition, there is a pattern of violation of Section 337 and it is difficult to identify the true source of infringing products.  At an absolute minimum, Purple respectfully requests that the Commission enter Limited Exclusion Orders ("LEO") and Cease and Desist Orders ("C&D Orders") against the proposed Respondents specifically named herein.

## II.      THE COMPLAINANT PURPLE

14.      Complainant Purple is a limited liability company organized and existing under the laws of the State of Delaware, with an address and principal place of business located at 4100 North Chapel Ridge Road, Suite 200, Lehi, Utah 84043.

15.      Purple is a wholly-owned subsidiary of Purple Innovation, Inc. ("PII"), a publicly-traded Delaware corporation with its principal place of business in Lehi, Utah.  PII is the sole managing member of Purple.

16.      Purple is the owner of an extensive intellectual property portfolio related to the Purple business and its products, including the intellectual property rights asserted herein.

## III.      PROPOSED RESPONDENTS

### A.      Aduken

17.      "Aduken"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 107.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Aduken" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Merayke" as being an Amazon seller of "Aduken" products.  *Id.*  The Amazon website further associated the apparent entity "Merayke" with an apparent entity referred to as "shenzhenshimairuikedianzishangwuyouxiangongsi."  Ex. 108.

18.      On information and belief, proposed Respondent Shenzhen Shi Mai Rui Ke Dianzi Shangwu Co. Ltd. ("Shenzhen Shi Mai") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Matian Street, Xinzhuang Community Songbai Road and South Ring Road Intersection, Yitian Holiday House 1, Unit A 1405, Shenzhen, Guangdong, China 518106.

19.     On information and belief, Shenzhen Shi Mai manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Aduken" brand via, for example, the Amazon website.  For ease of reference, Shenzhen Shi Mai will be referred to as "Aduken" herein.

**B.     BBK**

20.     "BBK"-brand pillows have been sold on-line via, for example, the Alibaba website. *See, e.g.*, Ex. 111.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "BBK" products is not fully understood at this time with certainty, the Alibaba website has identified at least one apparent entity referred to as "Shenzhen Baibaikang Technology Co., Ltd." as being an Alibaba seller of "BBK" products.  Ex. 112.

21.     On information and belief, proposed Respondent Shenzhen Baibaikang Technology Co., Ltd. ("Shenzhen Baibaikang") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 6B03, West Plant, Floor 6, 2, Guangxian Plot, Bagua 3rd Road, Yuanling Street, Shenzhen, Guangdong, China 518029.

22.     On information and belief, Shenzhen Baibaikang manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "BBK" brand via, for example, the Alibaba website.  For ease of reference, Shenzhen Baibaikang will be referred to as "BBK" herein.

**C.     Bedmate-U**

23.     On information and belief, Bedmate-U Co., Ltd. ("Bedmate-U") is a foreign corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 123, Sindae-gil, Gonjiam-eup, Gwangju-si, Gyeonggi-do, Republic of Korea 12801. Ex. 116.

24.     On information and belief, Bedmate-U manufactures or has manufactured pillow products in the Republic of Korea and/or has such products manufactured for it in the People's Republic of China, and/or advertises and sells such products on-line via, for example, a Bedmate-U website (www.bedmate-u.com) and the IndieGoGo websites.  *See, e.g.*, Exs. 115–16.

**D.     Berklan**

25.     "Berklan"-brand pillows and seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 119.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Berklan" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Ningbo Bolian Import and Export Co., Ltd." as being an Amazon seller of "Berklan" products.  Ex. 120.

26.     On information and belief, proposed Respondent Ningbo Bolian Import & Export Co., Ltd. ("Ningbo Bolian") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 2-3-8, No. 326 Qianhu Avenue, Dongqian Lake Tourist Resort Zone, Ningbo, Zhejiang, China 315121.

27.     On information and belief, Ningbo Bolian manufactures or has manufactured pillow and seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Berklan" brand via, for example, the Amazon website.  For ease of reference, Ningbo Bolian will be referred to as "Berklan" herein.

**E.     Bingyee**

28.     "Bingyee"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 147.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Bingyee" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as

"bingyee" as being an Amazon seller of "Bingyee" products. *Id.* On information and belief, the apparent entity referred to as "bingyee" is associated with an entity referred to as "Hubei Sheng Bingyi Dianzi Keji Youxian Gongsi." Ex. 148.

29.     On information and belief, proposed Respondent Hubei Sheng Bingyi Dianzi Keji Youxian Gongsi Co. Ltd. ("Hubei Sheng Bingyi") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Jiuyuhuangcheng, 6 Zhuang, 3 Danyuan, 603 Shi, Xiannvshan Jiedao Tiyuguanlu 288 Hao, Xiaogan, Hanchuan, Hubei, China 431699.

30.     On information and belief, Hubei Sheng Bingyi manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Bingyee" brand via, for example, the Amazon website. For ease of reference, Hubei Sheng Bingyi will be referred to as "Bingyee" herein.

**F.      Birtimo**

31.     "Birtimo"-brand seat cushions have been sold on-line via, for example, the Amazon website. *See, e.g.*, Ex. 151. Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Birtimo" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Manam Jub" as being an Amazon seller of "Birtimo" products. *Id.* On information and belief, the apparent entity referred to as "Manam Jub" is associated with an entity referred to as "Guang Zhou Wen Jie Shang Mao You Xian Gong Si." Ex. 152.

32.     On information and belief, proposed Respondent Guang Zhou Wen Jie Shang Mao Youxian Gongsi Co., Ltd. ("Guang Zhou") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 102, No. 15, Lane 111, Yusheng Road, Chenjia, Chongming, Shanghai, China 202162.

33.     On information and belief, Guang Zhou manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Birtimo" brand via, for example, the Amazon website.  For ease of reference, Guang Zhou will be referred to as "Birtimo" herein.

**G.     Buysigo**

34.     "Buysigo"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 155.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Buysigo" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "buysigo" as being an Amazon seller of "Buysigo" products.  *Id.*  On information and belief, the apparent entity referred to as "buysigo" is associated with an entity referred to as "Guangzhoushi Baixiangguo Kejiyouxiangongsi."  Ex. 156.

35.     On information and belief, proposed Respondent Guangzhoushi Baixiangguo Keji Youxian Gongsi Co., Ltd. ("Guangzhoushi") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Fengze Dong Lu 106 Hao, Zi Bian 1 Hao Lou X1301-B5235, Nansha, Guangzhou, Guangdong, China 511458.

36.     On information and belief, Guangzhoushi manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Buysigo" brand via, for example, the Amazon website.  For ease of reference, Guangzhoushi will be referred to as "Buysigo" herein.

**H.     DAPU**

37.     "DAPU"-brand pillows and seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 159.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "DAPU" products is not fully understood at this

time with certainty, the Amazon website has identified at least one apparent entity referred to as "Ningbo Minzhou Import & Export Co., Ltd." as being an Amazon seller of "DAPU" products. Ex. 160.

38.     On information and belief, proposed Respondent Ningbo Minzhou Import & Export Co., Ltd. ("Ningbo Minzhou") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 4697, Building No. 3, Lane 3, Xijing Road, Shijingshan District, Airport Road No. 5000, Shiqi Street, Haishu, Beijing, China 100043.

39.     On information and belief, Ningbo Minzhou manufactures or has manufactured pillow and seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "DAPU" brand via, for example, a "DAPU" website (www.dapuhome.com), and the Amazon website.  For ease of reference, Ningbo Minzhou will be referred to as "DAPU" herein.

**I.     Dirani Design**

40.     "Dirani Design"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 175.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Dirani Design" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Foshan Dirani Design Furniture Co., Limited" as being an Amazon seller of "Dirani Design" products.  Ex. 176.

41.     On information and belief, proposed Respondent Foshan Dirani Design Furniture Co., Ltd. ("Foshan Dirani Design") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at RA-3-026A, 3rd Floor, Bldg. A, Jiabocheng No. 189, Middle Foshan Avenue, Foshan, Guangdong, China 528000.

42.     On information and belief, Foshan Dirani Design manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "Dirani Design" brand via, for example, the Amazon website.  For ease of reference, Foshan Dirani Design will be referred to as "Dirani Design" herein.

### J.     Epsilon/Husdow

43.     "Epsilon"-brand pillows have been sold on-line via, for example, the Alibaba website.  *See, e.g.*, Ex. 183.   Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Epsilon" products is not fully understood at this time with certainty, the Alibaba website has identified at least one apparent entity referred to as "Guangzhou Epsilon Import and Export Co., Ltd." as being the Alibaba seller of "Epsilon" products.  Ex. 184.

44.     On information and belief, proposed Respondent Guangzhou Epsilon Import and Export Co., Ltd. ("Guangzhou Epsilon") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 231, 2/F, Building 10, No. 1, Erheng Road, West District Hebian Tongda Creative Park, Helong Street, Guangzhou, Guangdong, China 510000.

45.     Purple ordered an infringing "Epsilon"-brand pillow product from the Alibaba website.  When the pillow shipment arrived, the packaging materials indicated that the pillow was in actuality a "Husdow"-brand pillow.  *See* Ex. 186.  The packaging materials further indicated the following:  "Manufacturer:  Chuang fan Handicraft Co., Ltd.  Address:  598 Zhengsong Avenue, Wanquan town."  *See id.*

46.     On information and belief, proposed Respondent Chuang Fan Handicraft Co., Ltd. ("Chuang Fan") is a foreign corporation organized and existing under the laws of the People's

Republic of China, with its principal place of business at 598 Zhengsong Avenue, Wanquan, Pingyang, Wenzhou, Zhejiang, China 325409.

47.     On information and belief, Guangzhou Epsilon and/or Chuang Fan manufacture or have manufactured pillow products in the People's Republic of China and/or advertise and sell such products on-line under the "Epsilon" and/or "Husdow" brands via, for example, the Alibaba website.    For ease of reference, Guangzhou Epsilon and Chuang Fan will be referred to individually and collectively as "Epsilon/Husdow" herein.

### K.    GWVJYQG

48.     "GWVJYQG"-brand pillows have been sold on-line via, for example, the AliExpress website. *See, e.g.*, Ex. 187.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "GWVJYQG" products is not fully understood at this time with certainty, the AliExpress website has identified at least one apparent entity having Chinese Business License Registration No. 410225000064714 as being an AliExpress seller of "GWVJYQG" products.  Ex. 188.  On information and belief, the apparent entity operating under Chinese Business License Registration No. 410225000064714 is an entity referred to as "Lankao Junchang Electronic Commerce Co., Ltd."  Furthermore, on information and belief, the trademark GWVJYQC has been registered with the China National Intellectual Property Administration, and the owner of this registration is "Lankao Junchang Electronic Commerce Co., Ltd."

49.     On information and belief, proposed Respondent Lankao Junchang Electronic Commerce Co., Ltd. ("Lankao Junchang") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Daonan New Street, Lankao, Kaifeng, Henan, China.

50.     On information and belief, Lankao Junchang manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-

line under the "GWVJYQG" brand via, for example, the AliExpress website.  For ease of reference, Lankao Junchang will be referred to as "GWVJYQG" herein.

### L.   Hanchuan

51.   "Hanchuan"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 191.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Hanchuan" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Shenzhen Shi Yuxiang Meirong Yongju Youxian Gongsi" as being an Amazon seller of "Hanchuan" products.  Ex. 192.

52.   On information and belief, proposed Respondent Shenzhen Shi Yuxiang Meirong Yongju Youxian Gongsi Co. Ltd. ("Shenzhen Shi Yuxiang") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 2801 B Zuo, Jingjiyujingyinxiang Er Qi, 5 Hao Niuchanglu, Pinghuan Shequ, Maluan Jiedao, Pingshan, Shenzhen, Guangdong, China 518118.

53.   On information and belief, Shenzhen Shi Yuxiang manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Hanchuan" brand via, for example, the Amazon website.  For ease of reference, Shenzhen Shi Yuxiang will be referred to as "Hanchuan" herein.

### M.   Haosduo

54.   "Haosduo"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 195.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Haosduo" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Youru E-Commerce Co., Ltd." as being an Amazon seller of "Haosduo" products.  *Id.*  On

information and belief, the apparent entity referred to as "Youru E-Commerce Co., Ltd." is associated with an entity referred to as "Yiwu Youru E-commerce Co., Ltd."  Ex. 196.

55.     On information and belief, proposed Respondent Yiwu Youru E-commerce Co., Ltd. ("Yiwu Youru") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Dong Da Lu 39, Building One, Jubao Road, Choujiang Street, Yiwu, Jinhua, Zhejiang, China 322000.

56.     Purple ordered an infringing "Haosduo"-brand pillow product from the Amazon website.  When the pillow shipment arrived, documents included with the pillow indicated that the manufacturer of the product was "Dongguan bounce Technology Co., Ltd."  *See* Ex. 202.

57.     On information and belief, proposed Respondent Dongguan Bounce Technology Co., Ltd. ("Dongguan Bounce") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at No. 10, Development Road, Mowu Village, Qishi Town, Dongguan, Guangdong Province, China.

58.     On information and belief, Yiwu Youru and/or Dongguan Bounce manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "Haosduo" brand via, for example, the Amazon website.  For ease of reference, Yiwu Youru and Dongguan Bounce will be referred to individually and collectively as "Haosduo" herein.

**N.     Helishy**

59.     "Helishy"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 203.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Helishy" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Super Seat" as being an Amazon seller of "Helishy" products.  *Id.*  On information and belief, the

apparent entity referred to as "Super Seat" is associated with an entity referred to as "Hetaibao." Ex. 204.

60.     On information and belief, proposed Respondent Hetaibao is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Hua Ji Zhen, He Lou Xing, Zheng Cun, He Lou 1 – 1 Hao, Linquan, Anhui, China 236400.

61.     On information and belief, Hetaibao manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Helishy" brand via, for example, the Amazon website.  For ease of reference, Hetaibao will be referred to as "Helishy" herein.

## O.     HSOAR

62.     "HSOAR"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 207.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "HSOAR" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Best DEAL" as being an Amazon seller of "HSOAR" products.  *Id.*  On information and belief, the apparent entity referred to as "Best DEAL" is associated with an entity referred to as "Guang An Shi Lin Chen Zai Sheng Wuzi Co. Ltd."  Ex. 208.

63.     On information and belief, proposed Respondent Guang An Shi Lin Chen Zai Sheng Wuzi Co. Ltd. ("Guang An") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at No. 752, Xianzhu Road, Xianyan Street, Ouhai, Wenzhou, Zhejiang, China 325000.

64.     On information and belief, Guang An manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-

line under the "HSOAR" brand via, for example, the Amazon website.  For ease of reference, Guang An will be referred to as "HSOAR" herein.

**P.    HSSGGV**

65.    "HSSGGV"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 211.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "HSSGGV" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "HSSGGV-US" as being an Amazon seller of "HSSGGV" products.  *Id.*  On information and belief, the apparent entity referred to as "HSSGGV-US" is associated with an entity referred to as "shenzhenshiyanhuangchuhaikejiyouxiangongsi."  Ex. 212.

66.    On information and belief, proposed Respondent Shenzhen Shi Yan Huang Chu Hai Keji Youxian Gongsi Co., Ltd. ("Shenzhen Shi Yan") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Minzhi Street, Room 701, Building 25, Shahu Old Village, Longhua, Shenzhen, Guangdong, China 518000.

67.    On information and belief, Shenzhen Shi Yan manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "HSSGGV" brand via, for example, the Amazon website.  For ease of reference, Shenzhen Shi Yan will be referred to as "HSSGGV" herein.

**Q.    JollyPop**

68.    "JollyPop"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 215.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "JollyPop" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as

"chiyangwangluo" as being an Amazon seller of "JollyPop" products. *Id.* On information and belief, the apparent entity referred to as "chiyangwangluo" is associated with an entity referred to as "shenzhenshichiyangwangluojishuyouxiangongsi." Ex. 216.

69.     On information and belief, proposed Respondent Shenzhen Shi Chi Yang Wang Luo Ji Shu Youxian Gongsi Co., Ltd. ("Shenzhen Shi Chi") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at No. 2-2, Xili North Road, Belvedere Community, Xili Street, Shahe Xili 223, Nanshan, Shenzhen, Guangdong, China 518000.

70.     On information and belief, Shenzhen Shi Chi manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "JollyPop" brand via, for example, the Amazon website.  For ease of reference, Shenzhen Shi Chi will be referred to as "JollyPop" herein.

## R.     JOOM

71.     "JOOM"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 219.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "JOOM" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Hsoar" as being an Amazon seller of "JOOM" products. *Id.* On information and belief, the apparent entity referred to as "Hsoar" is associated with an entity referred to as "ruianxiuyuanguojimaoyiyouxiangongsi." Ex. 220.

72.     On information and belief, proposed Respondent Ruian Xiu Yuan Guoji MaoYi Youxian Gongsi Co., Ltd. ("Ruian") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Luofeng, Bashuicun Kangweilu 2 Hao, Tangxia, Ruian, Wenzhou, Zhejiang, China 325000.

73.     On information and belief, Ruian manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "JOOM" brand via, for example, the Amazon website.  For ease of reference, Ruian will be referred to as "JOOM" herein.

**S.     JSGM**

74.     "JSGM"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 223.   Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "JSGM" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Chenyi International Trade Store" as being an Amazon seller of "JSGM" products.  *Id*.  On information and belief, the apparent entity referred to as "Chenyi International Trade Store" is associated with an entity referred to as "Kaifengshilongtingquchenyishangmaoyouxiangongsi."  Ex. 224.

75.     On information and belief, proposed Respondent Kaifeng Shi Long Ting Qu Chen Yi Shangmao Youxian Gongsi Co., Ltd. ("Kaifeng") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 2002, Unit 2, Building 10, Phase 3, Shenghua City, Fuxing Avenue, Longting, Kaifeng, Henan, China 475000.

76.     On information and belief, Kaifeng manufactures or has manufactured pillow products in the People's Republic of China and advertises and sells such products on-line under the "JSGM" brand via, for example, the Amazon website.  For ease of reference, Kaifeng will be referred to as "JSGM" herein

**T.     Kinglei**

77.     "Kinglei"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 227.   Although the universe of entities currently responsible for

20

manufacturing, importing, and/or selling the "Kinglei" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Hangzhou Lydia Sports Goods Co., Ltd." as being an Amazon seller of "Kinglei" products. Ex. 228.

78.     On information and belief, proposed Respondent Hangzhou Lydia Sports Goods Co., Ltd. ("Hangzhou Lydia") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Rooms 201 and 202, Building 1, Jinjishan Village, Suoqian Town, Xiaoshan, Hangzhou, Zhejiang, China 312000.

79.     On information and belief, Hangzhou Lydia manufactures or has manufactured pillow products in the People's Republic of China and advertises and sells such products on-line under the "Kinglei" brand via, for example, the Amazon website.  For ease of reference, Hangzhou Lydia will be referred to as "Kinglei" herein.

**U.     KJTOC/Fashion Lotus**

80.     "KJTOC"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 231.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "KJTOC" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "ShanXiChaoMaXunKeJiYouXianGongSi" as being an Amazon seller of "KJTOC" products.  Ex. 232.

81.     On information and belief, proposed Respondent Shanxi Chao Ma Xun Keji Youxian Gongsi Co., Ltd. ("Shanxi") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Tonggang Road, Chengbei Xinjing Community Building 1, Building 2, Unit 17B, Xinfu, Xinzhou, Shanxi, China 034000.

82.     Purple ordered an infringing "KJTOC"-brand pillow product from the Amazon website.  When the pillow shipment arrived, the packaging materials indicated that the pillow was in actuality a "Fashion Lotus"-brand pillow.  *See* Ex. 234.  Upon information and belief, an apparent entity referred to as "Ruian Ketai Commodity Co., Ltd." owns Chinese trademarks used in connection with "Fashion Lotus"-brand pillows.

83.     On information and belief, proposed Respondent Ruian Ketai Commodity Co., Ltd. ("Ruian Ketai") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Taitou Village, Xianxia Street, Ruian, Zhejiang, China.

84.     On information and belief, Shanxi and/or Ruian Ketai manufacture or have manufactured pillow products in the People's Republic of China and/or advertise and sell such products on-line under the "KJTOC" and/or "Fashion Lotus" brands via, for example, the Amazon website.  For ease of reference, Shanxi and Ruian Ketai will be referred to individually and collectively as "KJTOC/Fashion Lotus" herein.

**V.     KYSMOTIC**

85.     "KYSMOTIC"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 235.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "KYSMOTIC" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "KYSMOTIC-US" as being an Amazon seller of "KYSMOTIC" products.  *Id.*  On information and belief, the apparent entity referred to as "KYSMOTIC-US" is associated with an entity referred to as "shandongjiuhuixinxikejiyouxiangongsi."  Ex. 236.

86.     On information and belief, proposed Respondent Shandong Jiu Hui Xinxi Keji Youxian Gongsi Co., Ltd. ("Shandong Jiu Hui") is a foreign corporation organized and existing

under the laws of the People's Republic of China, with its principal place of business at 112 Jiefang

Road, Chia Tai Times 1204, Lixia, Jinan, Shangdong, China 250000.

87.     On information and belief, Shandong Jiu Hui manufactures or has manufactured

seat cushion products in the People's Republic of China and/or advertises and sells such products

on-line under the "KYSMOTIC" brand via, for example, the Amazon website.   For ease of

reference, Shandong Jiu Hui will be referred to as "KYSMOTIC" herein.

**W.     Leadfar**

88.     "Leadfar"-brand pillows have been sold on-line via, for example, the Alibaba

website.   *See, e.g.*, Ex. 239.   Although the universe of entities currently responsible for

manufacturing, importing, and/or selling the "Leadfar" products is not fully understood at this time

with certainty, the Alibaba website has identified at least one apparent entity referred to as

"Shenzhen Leadfar Industry Co., Ltd." as being the Alibaba seller of "Leadfar" products.  Ex. 240.

89.     On information and belief, proposed Respondent Shenzhen Leadfar Industry Co.,

Ltd. ("Shenzhen Leadfar") is a foreign corporation organized and existing under the laws of the

People's Republic of China, with its principal place of business at 73-E Shatian North Road,

Shatian, Kengzi, Pingshan, Shenzhen, Guangdong, China 518122.

90.     On information and belief, Shenzhen Leadfar manufactures or has manufactured

pillow products in the People's Republic of China and/or advertises and sells such products on-

line under the "Leadfar" brand via, for example, the Alibaba website.   For ease of reference,

Shenzhen Leadfar will be referred to as "Leadfar" herein.

**X.     Liu/Husdow**

91.     "Liu"-brand pillows have been sold on-line via, for example, the Amazon website.

*See, e.g.*, Ex. 243.   Although the universe of entities currently responsible for manufacturing,

importing, and/or selling the "Liu" products is not fully understood at this time with certainty, the

Amazon website has identified at least one apparent entity referred to as "gfd5556ds" as being an Amazon seller of "Liu" products.  *Id.*  On information and belief, the apparent entity "gfd5556ds" is associated with an apparent entity referred to as "LiuLinXianXuBinDianZiChanPinDian."  Ex. 244.

92.     On information and belief, proposed Respondent Liu Lin Xian Xu Bin Dian Zi Chan Pin Dian ("Liu Lin") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Pingtou Village, Sanjiao, Luliang, Liulin, Shanxi, China 033300.

93.     Purple ordered an infringing "Liu"-brand pillow product from the Amazon website. When the pillow shipment arrived, the packaging materials indicated that the pillow was in actuality a "Husdow"-brand pillow.  The packaging materials further indicated the following: "Manufacturer:  Chuang fan Handicraft Co., Ltd.  Address:  598 Zhengsong Avenue, Wanquan town."  *See* Ex. 246.

94.     On information and belief, proposed Respondent Chuang Fan Handicraft Co., Ltd. ("Chuang Fan") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 598 Zhengsong Avenue, Wanquan, Pingyang, Wenzhou, Zhejiang, China 325409.

95.     On information and belief, Liu Lin and/or Chuang Fan manufacture or have manufactured pillow products in the People's Republic of China and/or advertise and sell such products on-line under the "Liu" and/or "Husdow" brands via, for example, the Amazon website. For ease of reference, Liu Lin and Chuang Fan will be referred to individually and collectively as "Liu/Husdow" herein.

### Y.    MZSSI

96.    "MZSSI"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 247.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "MZSSI" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "GSAJ" as being an Amazon seller of "MZSSI" products.  *Id.*  On information and belief, the entity referred to as "GSAJ" is associated with a individual or entity referred to as "Zhou Meng Bo."  Ex. 248.

97.    On information and belief, proposed Respondent Zhou Meng Bo is an individual or entity with a business address located at 618, Building 380, Shayuanpu Building, Minzhi, Longhua, Shenzhen, Guangdong, China 51831.

98.    On information and belief, Zhou Meng Bo manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "MZSSI" brand via, for example, the Amazon website.  For ease of reference, Zhou Meng Bo will be referred to as "MZSSI" herein.

### Z.    OMCOZY

99.    "OMCOZY"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 251.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "OMCOZY" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Omcscds" as being an Amazon seller of "OMCOZY" products.  *Id.*  On information and belief, the entity referred to as "Omcscds" is associated with an entity referred to as "shenzhenshixinshangpindianzishangwuyouxiangongsi."  Ex. 252.

100.    On information and belief, proposed Respondent Shenzhen Shi Xin Shangpin Dianzi Shangwu Youxian Gongsi Co., Ltd. ("Shenzhen Shi Xin") is a foreign corporation

25

organized and existing under the laws of the People's Republic of China, with its principal place of business at Mingkang Road, Zhangkeng District 2, 58 Building 1178, Longhua, Shenzhen, Guangdong, China 518131.

101.   On information and belief, Shenzhen Shi Xin manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "OMCOZY" brand via, for example, the Amazon website.  For ease of reference, Shenzhen Shi Xin will be referred to as "OMCOZY" herein.

**AA.    Rongbaor**

102.   "Rongbaor"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 255.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Rongbaor" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "rongbaoer" as being an Amazon seller of "Rongbaor" products.  *Id.*  On information and belief, the entity referred to as "rongbaoer" is associated with an entity referred to as "nanchangshirongbaoerguanggaoyouxiangongsi."  Ex. 256.

103.   On information and belief, proposed Respondent Nanchang Shirong Bao Er Guanggao Youxian Gongsi Co., Ltd. ("Nanchang Shirong") is a foreign entity with its principal place of business located at 3399 Ziyang Avenue, Room 2-035, Underground Commercial Plaza, Building B, Cloud City, Nanchang High-Tech Industrial Development Zone, Nanchang, Jiangxi, China 330096.

104.   On information and belief, Nanchang Shirong manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Rongbaor" brand via, for example, the Amazon website.  For ease of reference, Nanchang Shirong will be referred to as "Rongbaor" herein.

**BB.**    **Sayouame**

105.    "Sayouame"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 259.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Sayouame" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Hangzhou Lishang Imp & Exp Co., Ltd." as being an Amazon seller of "Sayouame" products. Ex. 260.

106.    On information and belief, proposed Respondent Hangzhou Lishang Import & Export Co., Ltd. ("HLIE") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 423, South District, Zhejiang Newspaper Printing, No. 38 Xiangyuan Road, Gongshu, Hangzhou, Zhejiang, China 310015.

107.    Purple ordered an infringing "Sayouame"-brand pillow product from the Amazon website.  When the pillow shipment arrived, the return address on the shipping container was labelled "Zhejiang Xinhui I & E Co., Ltd."  *See* Ex. 262.

108.    On information and belief, proposed Respondent Zhejiang Xinhui Import & Export Co., Ltd. ("Zhejiang Xinhui") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at No. 148, Xiazhuangli Bingjiang, Hangzhou, Zhejiang, China 310052.

109.    On information and belief, HLIE and/or Zhejiang Xinhui manufacture or have manufactured pillow products in the People's Republic of China and/or advertise and sell such products on-line under the "Sayouame" brand via, for example, the Amazon website.  For ease of reference, HLIE and Zhejiang Xinhui will be referred to individually and collectively as "Sayouame" herein.

**CC.    Sbriun**

110.    "Sbriun"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 263.   Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Sbriun" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Ommya" as being an Amazon seller of "Sbriun" products.  *Id.*  On information and belief, the entity referred to as "Ommya" is associated with an individual or entity referred to as Lei Lei Wang.  Ex. 264.

111.    On information and belief, proposed Respondent Lei Lei Wang is an individual or entity with a business address located at No. 33, Hou Xiegou, Xiegou Administrative Village, Tupi Township, Fuyang, Linquan, Anhui, China 236400.

112.    On information and belief, Lei Lei Wang manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Sbriun" brand via, for example, the Amazon website.  For ease of reference, Lei Lei Wang will be referred to as "Sbriun" herein.

**DD.    SelectSoma**

113.    "SelectSoma"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 267.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "SelectSoma" products is not fully understood at this time with certainty, the Amazon website has identified the party "Heather Henson" as being an Amazon seller of "SelectSoma" products.  Ex. 268.  On information and belief, Heather Henson does business under an entity named "Henson Holdings, LLC."

114.    On information and belief, Henson Holdings, LLC d.b.a. SelectSoma ("SelectSoma") is a Louisiana limited liability company with a principal place of business located at 112 Tucson Drive, Lafayette, Louisiana 70503.  *Id*.

115.    On information and belief, SelectSoma manufactures "SelectSoma"-brand seat cushions and/or has such products manufactured for it in the People's Republic of China, and/or advertises and sells such products on-line via, for example, a SelectSoma website (https://www.selectsoma.com/) and the Amazon, Facebook, Etsy, and YouTube websites.

**EE.    Shengyang**

116.    "Shengyang"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 271.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Shengyang" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "HaoYDP" as being an Amazon seller of "Shengyang" products.  *Id*.  On information and belief, the apparent entity "HaoYDP" is associated with an apparent entity referred to as "XiaoXiaoPiFaShangMaoYouXianZeRenGongSi."  Ex. 272.

117.    On information and belief, proposed Respondent Xiao Xiao Pi Fa Shang Mao You Xian Ze Ren Gongsi Co. ("Xiao Xiao") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Row 40, Magnetic Kilns, Ningxiang, Zhongyang, Luliang, Shanxi, China 033400.

118.    On information and belief, Xiao Xiao manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "Shengyang" brand via, for example, the Amazon website.  For ease of reference, Xiao Xiao will be referred to as "Shengyang" herein.

**FF.    Sofa In**

119.    "Sofa In"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 275.   Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Sofa In" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Global Ocean Trading Company Limited" as being an Amazon seller of "Sofa In" products.  *Id.*

120.    On information and belief, proposed Respondent Global Ocean Trading Company Limited ("Global Ocean") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 201, 2nd Floor, No. 1 Renmin North Road, Longjiang Community, Longjiang Town, Shunde, Foshan, Guangdong, China 528318.

121.    On information and belief, Global Ocean manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "Sofa In" brand via, for example, the Amazon website.  For ease of reference, Global Ocean will be referred to as "Sofa In" herein.

**GG.    Suptempo**

122.    "Suptempo"-brand seat cushions have been sold on-line via, for example, the Amazon website. *See, e.g.*, Ex. 279.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Suptempo" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "FTERS SMITH" as being an Amazon seller of "Suptempo" products.  *Id.*  On information and belief, the apparent entity referred to as "FTERS SMITH" is associated with an entity referred to as "Haircrafters LLC."  Ex. 280.

123.    On information and belief, proposed Respondent Haircrafters LLC ("Haircrafters") is a limited liability company with a mailing address located at 7022 Shallowford Road, Suite 1, Unit #532, Chattanooga, TN 37421-6714.

124.    On information and belief, Haircrafters manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Suptempo" brand via, for example, the Amazon website.  For ease of reference, Haircrafters will be referred to individually and collectively as "Suptempo" herein.

**HH.    TR/Musite**

125.    "TR"-brand a.k.a. "Musite"-brand (collectively "TR/Musite") pillows have been sold on-line via, for example, the Alibaba website.  *See, e.g.*, Ex. 283.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "TR/Musite" products is not fully understood at this time with certainty, the Alibaba website has identified at least one apparent entity referred to as "Shenzhen Tianrun Material Co., Ltd." as being the Alibaba seller of "TR/Musite" products.  *See, e.g.*, *id.*

126.    On information and belief, proposed Respondent Shenzhen Tianrun Material Co., Ltd. ("Shenzhen Tianrun") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 307, No. 2, Baoyuan 2nd District, Labor Community, Xixiang Street, Shenzhen, Guangdong, China 518000.

127.    On information and belief, Shenzhen Tianrun manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "TR" and/or "Musite" brands via, for example, the Alibaba website.  For ease of reference, Shenzhen Tianrun will be referred to as "TR/Musite" herein.

## II.      Uknow

128.     "Uknow"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 295.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "Uknow" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "Cooushing" as being an Amazon seller of "Uknow" products.  *Id.*  On information and belief, the apparent entity referred to as "Cooushing" is associated with an entity referred to as "wuhanshichenkuxuankejiyouxiangongsi."   Ex. 296.

129.     On information and belief, proposed Respondent Wuhan Chenkuxuan Technology Co., Ltd. ("Wuhan Chenkuxuan") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at F6, Building 1, SAGE Jishukaifa Center, 26 Binhu Road, E. Lake Xin Ji Shu Kai Fa Qu, Wuhan, Hubei, China 430040.

130.     On information and belief, Wuhan Chenkuxuan manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "Uknow" brand via, for example, the Amazon website.  For ease of reference, Wuhan Chenkuxuan will be referred to as "Uknow" herein.

## JJ.      WEADDU

131.     "WEADDU"-brand pillows have been sold on-line via, for example, the Alibaba website.  *See, e.g.*, Ex. 299.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "WEADDU" products is not fully understood at this time with certainty, the Alibaba website has identified at least one apparent entity referred to as "Dongguan Jingrui Silicone Technology Co., Ltd." as being the Alibaba seller of "WEADDU" products.  *See, e.g.*, *id.*

132.     On information and belief, proposed Respondent Dongguan Jingrui Silicone Technology Co., Ltd. ("Dongguan Jingrui") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 2-5-301, Niushan Ind. Road, Dongcheng Street, Dongguan, Guangdong, China 523128.

133.     On information and belief, Dongguan Jingrui manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "WEADDU" brand via, for example, the Alibaba website.  For ease of reference, Dongguan Jingrui will be referred to as "WEADDU" herein.

**KK.     YRDZ**

134.     "YRDZ"-brand pillows have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 303.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "YRDZ" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "YRDZSW" as being an Amazon seller of "YRDZSW" products.  *Id.*  On information and belief, the apparent entity "YRDZSW" is associated with an apparent individual or entity referred to as "YaRu Wang."  Ex. 304.

135.     On information and belief, proposed Respondent YaRu Wang is an individual or entity with a business address located at No. 3, Southwest Gate Street, Renyan Village, Jicun, Fenyang, Luliang, Shanxi, China 032200.

136.     On information and belief, YaRu Wang manufactures or has manufactured pillow products in the People's Republic of China and/or advertises and sells such products on-line under the "YRDZ" brand via, for example, the Amazon website.  For ease of reference, YaRu Wang will be referred to as "YRDZ" herein.

**LL.   YWSHUF**

137.   "YWSHUF"-brand seat cushions have been sold on-line via, for example, the Amazon website.  *See, e.g.*, Ex. 311.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "YWSHUF" products is not fully understood at this time with certainty, the Amazon website has identified at least one apparent entity referred to as "XinXinChang" as being an Amazon seller of "YWSHUF" products.  *Id.*  On information and belief, the apparent entity referred to as "XinXinChang" is associated with an individual or entity named "Xiao Dawei."  Ex. 312.

138.   On information and belief, proposed Respondent Xiao Dawei is an individual or entity with a business address located at Room 402, 4th Floor, No.137, Tongan Park, Industrial Concentration Zone, Tong'an, Xiamen, Fujian, China 361199.

139.   On information and belief, Xiao Dawei manufactures or has manufactured seat cushion products in the People's Republic of China and/or advertises and sells such products on-line under the "YWSHUF" brand via, for example, the Amazon website.  For ease of reference, Xiao Dawei will be referred to as "YWSHUF" herein.

**MM.   ZY/Husdow**

140.   "ZY"-brand pillows have been sold on-line via, for example, the Alibaba website.  *See, e.g.*, Ex. 315.  Although the universe of entities currently responsible for manufacturing, importing, and/or selling the "ZY" products is not fully understood at this time with certainty, the Alibaba website has identified at least one apparent entity referred to as "Hebei Zeyong Technology Co., Ltd." as being the Alibaba seller of "ZY" products.  *Id.*

141.   On information and belief, proposed Respondent Hebei Zeyong Technology Co., Ltd. ("Hebei Zeyong") is a foreign corporation organized and existing under the laws of the

People's Republic of China, with its principal place of business at North End of Fuqiang Road, Dahu Jingguan, Pengdu Township, Binhu New Area, Hengshui, Hebei, China 053000.

143.    Purple ordered an infringing "ZY"-brand pillow product from the Alibaba website. When the pillow shipment arrived, the packaging materials indicated that the pillow was in actuality a "Husdow"-brand pillow.  The packaging materials further indicated the following: "Manufacturer:  Chuang fan Handicraft Co., Ltd.  Address:  598 Zhengsong Avenue, Wanquan town."  *See* Ex. 318.

143.    On information and belief, proposed Respondent Chuang Fan Handicraft Co., Ltd. ("Chuang Fan") is a foreign corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at 598 Zhengsong Avenue, Wanquan, Pingyang, Wenzhou, Zhejiang, China 325409.

144.    On information and belief, Hebei Zeyong and/or Chuang Fan manufacture or have manufactured pillow products in the People's Republic of China and/or advertise and sell such products on-line under the "ZY" brand via, for example, the Alibaba website.  For ease of reference, Hebei Zeyong and Chuang Fan will be referred to individually and collectively as "ZY/Husdow" herein.

## IV.   THE ASSERTED TRADE DRESS

145.    Purple owns protectable rights in the Purple Trade Dress.  Purple's mattresses, pillows, and seat cushions have certain design elements that, taken together, constitute the Purple Trade Dress and that serve to identify the source of Purple's mattresses, pillows, and seat cushions and distinguish them from other commercially-available mattresses, pillows, and seat cushions. Purple's use of the Purple Trade Dress is readily observable in advertising and marketing materials displayed to the general consuming public.  Exemplary images showing use of the Purple Trade Dress in such advertising and marketing materials are shown below:



*See* Exs. 4–8.

146.    As reflected above, Purple Trade Dress specifically includes the following elements in combination:

a.    The use of an elastomeric material that is uniformly and distinctively purple in color, although the particular tint and shade of purple may vary for different products.

b.    The elastomeric material is shaped into a repetitive grid pattern, such as a pattern of repeating triangles, squares, or hexagons.

147.    The Purple Trade Dress is distinctive and has acquired secondary meaning based on, *inter alia*:

a.    years of continuous and substantially exclusive use of the Purple Trade Dress in connection with Purple's mattresses, pillows, and seat cushions;

b.    extensive Purple advertising and promotional activities, essentially all of which features Purple mattress, pillow, and seat cushion products utilizing the Purple Trade Dress;

c.    Purple's extensive sales to customers and end users of Purple mattresses, pillows, and seat cushions utilizing the Purple Trade Dress;

d.    extensive unsolicited media coverage and third-party awards and recognition concerning Purple mattresses, pillows, and seat cushions utilizing the Purple Trade Dress; and

e.    intentional and widespread copying of the Purple Trade Dress on mattresses, pillows, and seat cushions sold by third-party competitors and sellers.

148.    As a result of such factors, the Purple Trade Dress has acquired distinctiveness and obtained secondary meaning in the minds of consumers, and consumers have come to recognize the Purple Trade Dress and rely upon that trade dress as an indicator of the source and quality of Purple's mattress, pillow, and seat cushion products.

149.     The entirety of elements that constitutes the Purple Trade Dress is non-functional. For example, there is no utilitarian or manufacturing advantage connected with mattresses, pillows, and seat cushions having a repetitive grid pattern that is colored purple, and the use of the color purple on any such grid pattern imparts no competitive advantage over the use of other colors.  As such, competitors in the mattress, pillow, and seat cushion marketplace have many other commercial alternatives to using the Purple Trade Dress when making and selling mattresses, pillows, and seat cushions.

## V.     THE ASSERTED TRADEMARKS

### A.     U.S. Trademark Registration No. 5,661,556

150.     On January 22, 2019, the United States Patent and Trademark Office issued U.S. Trademark Registration No. 5,661,556 ("the '556 Mark") for the word mark PURPLE for use in connection with pillows, bed pillows, head supporting pillows, and neck-supporting pillows. Purple is the registered owner of the '556 Mark.  A certified copy of the '556 Mark is submitted herewith as Appendix E.   A certified copy of the file history for the '556 Mark is submitted herewith as Appendix F.  A certified copy of each assignment recorded with the United States Patent and Trademark Office for the '556 Mark is submitted herewith as Appendix G.  A list of entities licensed to use the '556 Mark in United States commerce is submitted herewith as Confidential Exhibit 60C.

### B.     U.S. Trademark Registration No. 6,551,053

151.     On November 9, 2021, the United States Patent and Trademark Office issued U.S. Trademark Registration No. 6,551,053 ("the '053 Mark") for the word mark PURPLE for use in connection with seat cushions.  Purple is the registered owner of the '053 Mark.  A certified copy of the '053 Mark is submitted herewith as Appendix H.   A certified copy of the file history for the '053 Mark is submitted herewith as Appendix I.  A certified copy of each assignment recorded

with the United States Patent and Trademark Office for the '053 Mark is submitted herewith as Appendix J.[2]   A list of entities licensed to use the '053 Mark in United States commerce is submitted herewith as Confidential Exhibit 62C.

## VI.   THE ASSERTED DESIGN PATENT

### A.   U.S. Patent No. D909,092

#### 1.   Identification and Ownership

152.   Purple is the owner by assignment of the right, title, and interest in U.S. Patent No. D909,092 ("the D092 Patent"), entitled "Pillow," which issued on February 2, 2021, naming Tony Pearce and Russell Whatcott as inventors.  For illustrative purposes, Figure 1 of the D092 Patent is shown below:



FIG. 1

---

[2] A certified copy of the assignment records for the '053 Mark has been ordered from the U.S. Patent and Trademark Office but has not yet been received by Complainant.  Complainant will supplement its Complaint and provide the certified documentation upon receipt.

153.     The D092 Patent issued from U.S. Patent Application Serial No. 29/676,862, filed on January 15, 2019, and expires on February 2, 2036.   A certified copy of the D092 Patent is submitted herewith as Appendix A.   A certified copy of the United States Patent and Trademark Office prosecution history for the D092 Patent is submitted herewith as Appendix B.   Copies of the technical references cited in the United States Patent and Trademark Office prosecution history for the D092 Patent are submitted herewith in Appendix C.   A certified copy of each assignment recorded with the United States Patent and Trademark Office for the D092 Patent submitted herewith in Appendix D.   There are no licensees under the D092 patent.

### 2. Foreign Counterparts

154.     There are no foreign counterpart patent applications or patents for the D092 Patent.

### 3. Non-Technical Description

155.     The D092 Patent generally discloses an ornamental design for a pillow.   The D092 Patent is a design patent, and the claimed design is depicted in the patent's figures.

## VII.   THE ASSERTED UTILITY PATENTS

### A.   U.S. Patent No. 10,772,445

#### 1. Identification and Ownership

156.     Purple is the owner by assignment of the right, title, and interest in U.S. Patent No. 10,772,445 ("the '445 Patent"), entitled "Pillow Including Gelatinous Elastomer Cushion Having Deformable Wall Members and Related Methods," which issued on September 15, 2020, naming Tony Pearce and Shawn Moon as inventors.   The '445 Patent issued from U.S. Patent Application Serial No. 15/333,486, filed on October 25, 2016, and expires on October 13, 2038.   A certified copy of the '445 Patent is submitted herewith as Appendix K.   A certified copy of the United States Patent and Trademark Office prosecution history for the '445 Patent is submitted herewith as Appendix L.   Copies of the technical references cited in the United States Patent and Trademark

40

Office prosecution history for the '445 Patent are submitted herewith in Appendix M.  A certified copy of each assignment recorded with the United States Patent and Trademark Office for the '445 Patent is submitted herewith in Appendix N.  There are no licensees under the '445 patent.

### 1. Foreign Counterparts

157.    The following is a list of each foreign patent and foreign patent application filed by Purple having claims corresponding to claims in the '445 Patent:

| Patent Application/Patent No. | Country | Status |
|---|---|---|
| AU 2017332148A1 | Australia | Application Pending |
| CA 3037403A1 | Canada | Issued |
| CN 201780005390 | China | Application Pending |
| EP 17853779A | EPO | Application Pending |
| JP 6605780B2 | Japan | Issued |
| JP 2019167768A | Japan | Application Pending |
| KR 20197009876A | Republic of Korea | Application Pending |
| TW I644641 | Taiwan | Issued |

### 2. Non-Technical Description

158.    The invention claimed in the '445 Patent is defined by the language of the patent claims.  Nevertheless, in compliance with 19 C.F.R. § 210.12(a)(9)(vi), the following is a non-technical description of the invention involved in the '445 Patent.  By providing this non-technical description, Purple is providing a general, non-limiting summary that is not intended to construe any particular claim language or waive any Purple rights or arguments in that regard.

159.    The '445 Patent in pertinent part generally discloses a method of fabricating a pillow consisting of two steps.  First, a pillow cushion with at least two major surfaces is formed consisting essentially of a gelatinous elastomer with deformable wall members that define voids, permitting the wall members to deform and buckle into adjacent voids when pressure is applied to the cushioning surface.  Second, the pillow cushion is enclosed in a pillow cover with no additional

cushioning material between the pillow cushion and the pillow cover.  The pillow as fabricated provides head and neck support when a user is sleeping or otherwise lying down.  The '445 Patent also discloses a pillow having a pillow cushion and a cover, the pillow cushion generally formed of gelatinous elastomer consists essentially of gelatinous elastomer and has deformable walls that buckle as well as an internal stabilizing layer.

### B.   U.S. Patent No. 10,863,837

#### 1.   Identification and Ownership

160.   Purple is the owner by assignment of the right, title, and interest in U.S. Patent No. 10,863,837 ("the '837 Patent"), entitled "Pillow Including Gelatinous Elastomer Cushioning Materials," which issued on December 15, 2020, naming Tony Pearce, Shawn Moon, and John Abel as inventors.  The '837 Patent issued from U.S. Patent Application Serial No. 15/936,175, filed on March 26, 2018, and expires on August 1, 2037.  A certified copy of the '837 Patent is submitted herewith as Appendix O.  A certified copy of the United States Patent and Trademark Office prosecution history for the '837 Patent is submitted herewith as Appendix P.  Copies of the technical references cited in the United States Patent and Trademark Office prosecution history for the '837 Patent are submitted herewith in Appendix Q.  A certified copy of each assignment recorded with the United States Patent and Trademark Office for the '837 Patent is submitted herewith in Appendix R.  There are no licensees under the '837 patent.

#### 2.   Foreign Counterparts

161.   The following is a list of each foreign patent and foreign patent application filed by Purple having claims corresponding to claims in the '837 Patent:

| Patent Application/Patent No. | Country | Status |
|---|---|---|
| JP2019167768A | Japan | Pending |

### 3. Non-Technical Description

162.    The invention claimed in the '837 Patent is defined by the language of the patent claims.  Nevertheless, in compliance with 19 C.F.R. § 210.12(a)(9)(vi), the following is a non-technical description of the invention involved in the '837 Patent.  By providing this non-technical description, Purple is providing a general, non-limiting summary that is not intended to construe any particular claim language or waive any Purple rights or arguments in that regard.

163.    The '837 Patent generally discloses a pillow having a first pillow cushion coupled to a second pillow cushion, and the two cushions together are enclosed within a single pillow cover.  The first pillow cushion consists essentially of gelatinous elastomer and has deformable walls that buckle.  The second pillow cushion has a different material composition (such as, e.g., a fibrous or foam material).  The three elements together constitute a single pillow that provides head and neck support when a user is sleeping or otherwise lying down.

## VIII.  THE PRODUCTS AT ISSUE

164.    The accused products are pillows and seat cushions that infringe the Purple trade dress, trademark, and/or patent rights asserted herein and/or which otherwise constitute or reflect unfair competition.  For purposes of 19 C.F.R. § 210.10(b)(1), a plain language description of the products at issue is:  certain pillows and seat cushions, and components thereof (such as pillow cushions inside pillows having provided pillow cases), wherein at least a material portion of the pillow cushions or seat cushions are made of purple elastomer material generally formed in a repetitive grid-like pattern, as well as packaging thereof.

165.    A chart identifying with specificity the universe of currently-accused products is submitted herewith as Exhibit 65.  For further ease of reference, a chart correlating in summary fashion each currently-accused product with the specific Purple trade dress, trademark, and/or patent rights currently known to be violated by such product is submitted herewith as Exhibit 66.

166.     The identification of accused products herein is based solely on information Purple has at this time and thus is intended to be illustrative and is not intended to limit the scope of the investigation with respect to the unfair acts that have been committed by any particular proposed Respondent.  Furthermore, as detailed herein, Purple seeks a General Exclusion Order that by definition would have a broader scope than the specific accused products of which Purple is currently aware.

## IX.     RESPONDENTS' UNLAWFUL AND UNFAIR ACTS

167.     Proposed Respondents have engaged in unfair practices in import trade within the meaning of 19 U.S.C. § 1337 as follows.

### A.     General Allegations

#### 1.     Trade Dress Infringement/Unfair Competition (15 U.S.C. § 1125(a))

168.     All proposed Respondents have engaged in unfair methods of competition and unfair acts pursuant to 19 U.S.C. § 1337(a)(1)(A).

169.     Specifically, all proposed Respondents have been importing into the United States, selling for importation into the United Sates, and/or selling after importation into the United States accused products in violation of 15 U.S.C. § 1125(a) at least because such accused products infringe the Purple Trade Dress and are otherwise likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of proposed Respondents with Purple, or as to the origin, sponsorship, or approval of proposed Respondents' goods, services, or commercial activities by Purple.  Proposed Respondents' misleading advertising and promotional activity with respect to such accused products further violates 15 U.S.C. § 1125(a).

170.     Proposed Respondents' accused products and the ways in which the importation into the United States, sales for importation into the United Sates, and/or sales after importation

into the United States of those products have violated 15 U.S.C. § 1125(a) are described below, in Section IX(B).

171.    As discussed in Section XII below, proposed Respondents' violations of 15 U.S.C. § 1125(a) have caused, and unless stopped, will continue to cause substantial injury to Purple, including at least substantial injury to the goodwill and reputation for quality associated with the Purple Trade Dress.

172.    On information and belief, proposed Respondents' violations of 15 U.S.C. § 1125(a) have been intentional, willful, and malicious.  As shown in Section IX(B) below, Proposed Respondents' intentional copying and bad faith is evidenced, for example, by their use of the Purple Trade Dress in tandem with their accompanying use of the asserted Purple registered trademarks.

### 2.    Trademark Infringement (15 U.S.C. § 1114)

173.    At least proposed Respondents BBK, Berklan, Buysigo, DAPU, Dirani Design, GWVJYQG, HSOAR, JollyPop, JOOM, JSGM, Kinglei, KJTOC/Fashion Lotus, KYSMOTIC, MZSSI, OMCOZY, Sayouame, SelectSoma, TR/Musite, and Uknow have engaged in unfair methods of competition and unfair acts pursuant to 19 U.S.C. § 1337(a)(1)(C).

174.    Specifically, at least proposed Respondents BBK, Berklan, DAPU, Dirani Design, GWVJYQG, JSGM, Kinglei, KJTOC/Fashion Lotus, Sayouame, and TR/Musite have been infringing the '556 Mark in connection with importing into the United States, selling for importation into the United Sates, and/or selling after importation into the United States accused pillow products.  Such infringements of the '556 Mark include infringements on product packaging and/or infringements occurring on point-of-sale websites.  *See, e.g.*, *Certain Fish-Handling Pliers and Packaging Thereof*, Inv. No. 337-TA-1169, Order No. 14, Initial Determination (Aug. 7, 2020) at 53–55, *aff'd and adopted in relevant part*, Comm'n Op. (Sept. 29, 2020).   Proposed

Respondents' infringements of the '556 Mark are likely to cause consumer confusion as to the source and/or sponsorship/affiliation of such accused pillow products, at least by creating the false and misleading impression that such products are manufactured by, authorized by, or otherwise associated with Purple.

175.     Similarly, at least proposed Respondents Berklan, Buysigo, DAPU, HSOAR, JollyPop, JOOM, KYSMOTIC, MZSSI, OMCOZY, SelectSoma, and Uknow have been infringing the '053 Mark in connection with importing into the United States, selling for importation into the United Sates, and/or selling after importation into the United States accused seat cushion products. Such infringements of the '053 Mark include infringements on product packaging and/or infringements occurring on point-of-sale websites. *See, e.g.*, *Certain Fish-Handling Pliers and Packaging Thereof*, Inv. No. 337-TA-1169, Order No. 14, Initial Determination (Aug. 7, 2020) at 53–55, *aff'd and adopted in relevant part*, Comm'n Op. (Sept. 29, 2020). Proposed Respondents' infringements of the '053 Mark are likely to cause consumer confusion as to the source and/or sponsorship/affiliation of such accused seat cushion products, at least by creating the false and misleading impression that such products are manufactured by, authorized by, or otherwise associated with Purple.

### 3.     Patent Infringement

#### a.     Design Patent Infringement (35 U.S.C. § 271)

176.     At least proposed Respondents BBK, Berklan, DAPU, Epsilon/Husdow, Kinglei, Liu/Husdow, Sofa In, TR/Musite, WEADDU, and ZY/Husdow have engaged in unfair methods of competition and unfair acts pursuant to 19 U.S.C. § 1337(a)(1)(B)(i).

177.     Specifically, at least proposed Respondents BBK, Berklan, DAPU, Epsilon/Husdow, Kinglei, Liu/Husdow, Sofa In, TR/Musite, WEADDU, and ZY/Husdow have been importing into the United States, selling for importation into the United Sates, and/or selling

after importation into the United States accused products in violation of 35 U.S.C. § 271 at least because such accused products directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, the inventive designs claimed in the D092 Patent.

### b.     Utility Patent Infringement (35 U.S.C. § 271)

178.    At least proposed Respondents BBK, Bedmate-U, Berklan, DAPU, Dirani Design, Epsilon/Husdow, GWVJYQG, Haosduo, JSGM, Kinglei, KJTOC/Fashion Lotus, Leadfar, Liu/Husdow, Sayouame, Sofa In, TR/Musite, WEADDU, YRDZ, and ZY/Husdow have engaged in additional unfair methods of competition and unfair acts pursuant to 19 U.S.C. § 1337(a)(1)(B)(i).

179.    Specifically, at least proposed Respondents BBK, Berklan, DAPU, Epsilon/Husdow, GWVJYQG, Haosduo, Kinglei, KJTOC/Fashion Lotus, Leadfar, Liu/Husdow, Sayouame, Sofa In, TR/Musite, WEADDU, YRDZ, and ZY/Husdow have been importing into the United States, selling for importation into the United Sates, and/or selling after importation into the United States accused pillow products in violation of 35 U.S.C. § 271 in that such products directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, the invention claimed in the '445 Patent.

180.    Similarly, at least proposed Respondents Bedmate-U, Berklan, Dirani Design, and JSGM have been importing into the United States, selling for importation into the United Sates, and/or selling after importation into the United States accused pillow products in violation of 35 U.S.C. § 271 in that such products directly and/or indirectly infringe, literally and/or under the doctrine of equivalents, the invention claimed in the '837 Patent.

**B.**      **Specific Allegations**

**1.**      **Aduken's Unlawful and Unfair Acts**

181.     Aduken sells for importation, imports, and/or sells after importation at least the "Gel Seat Cushion-Non-Slip Cover with Ties Gel Egg Office Seat Cushion for Tailbone Pain-Office Chair Car Seat Cushion-Sciatica & Back Pain Relief" seat cushions ("Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

182.     Aduken sells the "Gel Seat Cushion" at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 107.

183.     At least the Aduken "Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Aduken's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Aduken, and/or as to the origin, sponsorship, or approval of the seat cushion and Aduken's commercial activities by Purple.

### 2.    BBK's Unlawful and Unfair Acts

184.    BBK sells for importation, imports, and/or sells after importation at least the "Super Soft Purple Pillow 3d Hyper Elastic Material Pressure Releasing TPE Grid Gel Pillow" ("Super Soft Purple Pillow"), which is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

185.    BBK sells products online via at least the Alibaba website.  A relevant image of the "Super Soft Purple Pillow" that has been advertised on the Alibaba website is shown below:



*See* Ex. 111.

186.    At least the BBK "Super Soft Purple Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because BBK's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or BBK, and/or as to the origin, sponsorship, or approval of the pillow and BBK's commercial activities by Purple.

187.    The BBK "Super Soft Purple Pillow" pillow cushion further infringes the D092 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 67.

188.    The BBK "Super Soft Purple Pillow" pillow further infringes at least claims 18, 19, and 21–29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 80.

189.    The BBK "Super Soft Purple Pillow," and BBK's commercial activities associated with selling for importation, importing, and/or selling after importation these pillows, further infringe the '556 Mark.  Specifically, BBK uses the '556 Mark at least on point-of-sale websites advertising these pillows.  *See* Ex. 111.

### 3.    Bedmate-U's Unlawful and Unfair Acts

190.    Bedmate-U sells for importation, imports, and/or sells after importation at least the "FitNek" pillow, which is a knock-off of Purple products.  A material portion of the exterior of the pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

191.    Bedmate-U sells the "FitNek" pillow at least on the Bedmate-U website and Indiegogo website.  Relevant images of the "FitNek" pillow that has been advertised on the Bedmate-U website are shown below:

 

*See* Ex. 116.

192.    At least the Bedmate-U "FitNek" pillow infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Bedmate-U's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the "FitNek" pillow and/or Bedmate-U, and/or as to the origin, sponsorship, or approval of the "FitNek" pillow and Bedmate-U's commercial activities by Purple.

193.    The "FitNek" pillow further infringes at least claims 1–3, 6, 10, 11, and 19 of the '837 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 102.

### 4.    Berklan's Unlawful and Unfair Acts

194.    Berklan sells for importation, imports, and/or sells after importation at least the "Purple Pillow," "Purple Pillow with Adjustable Booster," "Purple Kid Pillow," "Women's Purple Pillow," and "Purple Harmony Pillow" pillows and the "Purple Seat Cushion" and "Purple Back Cushion" cushions, all of which are knock-offs of Purple products.  These pillows and cushions are only advertised, marketed, and sold in the color purple and they include purple elastomeric gel pillows.  The "Purple Pillow," "Purple Pillow with Adjustable Booster," "Women's Purple Pillow," and "Purple Kid Pillow" pillow cushions and the "Purple Seat Cushion" and "Purple Back Cushion" cushions are made of purple elastomer material formed in a repetitive grid pattern.  A material portion of the exterior of the "Purple Harmony Pillow" pillow cushion is made of purple elastomer material formed in a repetitive grid pattern.

195.    Berklan sells products online via at least the Amazon website.  Relevant images from the Amazon website, as well as the products that have been advertised and sold on the Amazon website, are shown below:



*See* Exs. 119, 123, 135, 139.

196.   At least the Berklan "Purple Pillow," "Purple Pillow with Adjustable Booster," "Purple Kid Pillow," "Women's Purple Pillow," and "Purple Harmony Pillow" pillows and the "Purple Seat Cushion" and "Purple Back Cushion" cushions infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Berklan's use of the Purple Trade Dress in connection with these pillows and cushions is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

of Purple with these pillows and cushions and/or Berklan, and/or as to the origin, sponsorship, or approval of the pillows and cushions and Berklan's commercial activities by Purple.

197.    The Berklan "Purple Pillow," "Purple Kid Pillow," and "Women's Purple Pillow" pillow cushions further infringe the D092 Patent.  Claim charts detailing these infringements are submitted herewith as Exhibits 68–70.

198.     The Berklan "Purple Pillow" further infringes at least claims 18, 19, 21–29, and 33 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 81.

199.    The Berklan "Purple Kid Pillow" further infringes at least claims 1–13, 16, 18, 19, 21–33, and 35 of the '445 patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 82.

200.    The Berklan "Women's Purple Pillow" further infringes at least claims 18, 19, 21–29, and 33 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 83.

201.    The Berklan "Purple Pillow with Adjustable Booster" pillow further infringes at least claims 1, 3, 4, 6, 10, and 11 of the '837 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 103.

202.    The Berklan "Purple Pillow," "Purple Pillow with Adjustable Booster," "Purple Kid Pillow," "Women's Purple Pillow," and "Purple Harmony Pillow" pillows, and Berklan's commercial activities associated with selling for importation, importing, and/or selling after importation these pillows, further infringe the '556 Mark.  Specifically, product packaging containing these pillows utilizes the '556 Mark.  *See, e.g.*, Exs. 122, 126, 130, 134.  Further,

Berklan uses the '556 Mark on point-of-sale websites advertising these pillows.   *See, e.g.*, Exs. 119, 123, 127, 131, 135.

203.    The Berklan "Purple Seat Cushion" and "Purple Back Cushion" cushions, and Berklan's commercial activities associated with selling for importation, importing, and/or selling after importation these cushions, further infringe the '053 Mark.   Specifically, Berklan uses the '053 Mark on point-of-sale websites advertising these cushions.   *See, e.g.*, Exs. 139, 143.

### 5.    Bingyee's Unlawful and Unfair Acts

204.    Bingyee sells for importation, imports, and/or sells after importation at least the "Gel Seat Cushion 1.8 Inch Cooling Gel Double Seat Cushion for Pressure Relief Orthopedic Chair Pads for Home Chair Office Chair Car Seat Cushion Sweatless Bottom for Long Sitting" seat cushions ("Gel Seat Cushion"), which are knock-offs of Purple products.   These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

205.    Bingyee sells "Gel Seat Cushion" seat cushions at least on Amazon.   Relevant images from the Amazon website, as well as the seat cushions that is advertised and sold on Amazon, are shown below:

 

*See* Ex. 147.

206.   At least the Bingyee "Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Bingyee's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Bingyee, and/or as to the origin, sponsorship, or approval of the seat cushion and Bingyee's commercial activities by Purple.

### 6.   Birtimo's Unlawful and Unfair Acts

207.   Birtimo sells for importation, imports, and/or sells after importation at least the "Gel Seat Cushion for Office Chair ,Gaming Chair Double Thick Royal Ultimate Seat Cushion for Long Sitting, Simply Chair Cushion Egg Cushion for Car, Wheelchair, Chair Pad" seat cushions ("Gel Seat Cushion"), which are knock-offs of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

208.   Birtimo sells "Gel Seat Cushion" seat cushions at least on Amazon.  Relevant images from the Amazon website, as well as the seat cushion that is advertised and sold on Amazon, are shown below:




*See* Ex. 151.

209.   At least the Birtimo "Gel Seat Cushions" infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Birtimo's use of the Purple Trade Dress in conection with the seat cushions is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushions and/or Birtimo, and/or as to the origin, sponsorship, or approval of the seat cushions and Birtimo's commercial activities by Purple.

### 7.   Buysigo's Unlawful and Unfair Acts

210.   Buysigo sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion Breathable, Double Thick Gel Cushion for Long Sitting with Non-Slip Cover   Breathable Chair Cushion for Office Chair, Car, Wheelchair, Long Trips" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

211.   Buysigo sells the "Purple Gel Seat Cushion" at least on Amazon.  Relevant images from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, are shown below:

 

*See* Ex. 155.

212.    At least the Buysigo "Purple Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Buysigo's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Buysigo, and/or as to the origin, sponsorship, or approval of the seat cushion and Buysigo's commercial activities by Purple.

213.    The Buysigo "Purple Gel Seat Cushion" and Buysigo's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Seat Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark.  *See, e.g.*, Ex. 158.  Further, Buysigo uses the '053 Mark on point-of-sale websites advertising these cushions.  *See, e.g.*, Ex. 155.

### 8.    DAPU's Unlawful and Unfair Acts

214.    DAPU sells for importation, imports, and/or sells after importation at least the "Purple Pillow Optimal Head Neck Support for Hot Sleepers 360º Grid Hex Soft Responsive Cool Moisture-Wicking for Neck Pain" ("Purple Pillow") and the "Kids Pillow Optimal Head Neck Support for Hot Sleepers 360º Grid Hex Soft Responsive Cool Moisture-Wicking for Neck Pain" ("Kids Pillow") pillows and the "Purple Color Lumbar Pillow Back Support Cushion for Office Chair Car Sofa Buckle and Extension Strap for Balanced Firmness with Breathable Pillowcase" ("Purple Lumbar Cushion") and "Seat Cushion for Car Wheelchair Computer and Desk Chair 100% High-Elastic Polymer Non-Slip Ergonomic Design (Purple)" ("Purple Seat Cushion") seat cushions, all of which are knock-offs of Purple products.  The pillow and seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

215.    DAPU sells products online via at least the DAPU and Amazon websites.  Relevant images from the Amazon website and the DAPU website, as well as the products that have been advertised and sold therein, are shown below:

 

*See* Exs. 159, 163.At least the DAPU "Purple Pillow" and the "Kids Pillow" pillows and the "Purple Lumbar Cushion" and "Purple Seat Cushion" seat cushions infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because DAPU's use of the Purple Trade Dress in connection with these pillows and seat cushions is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with these pillows and seat cushions and/or DAPU, and/or as to the origin, sponsorship, or approval of the pillows and seat cushions and DAPU's commercial activities by Purple.

216.    The DAPU "Purple Pillow" and "Kids Pillow" pillow cushions also infringe the D092 Patent.  Claim charts detailing these infringements are submitted herewith as Exhibits 71–72.

217.    The DAPU "Purple Pillow" pillow further infringes at least claims 18, 19, 21–25, and 27–29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 84.

218.    The DAPU "Kids Pillow" pillow further infringes at least claims 18, 19, and 21–29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 85.

219.    The DAPU "Purple Pillow," and DAPU's commercial activities associated with selling for importation, importing, and/or selling after importation these pillows, further infringe the '556 Mark.  Specifically, product packaging containing these pillows utilizes the '556 Mark.  *See, e.g.*, Ex. 162.  Further, DAPU uses the '556 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Ex. 159.

220.    The DAPU "Purple Lumbar Cushion" and "Purple Seat Cushion," and DAPU's commercial activities associated with selling for importation, importing, and/or selling after importation these cushions, further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark.  *See, e.g.*, Exs. 170, 174.  Further, DAPU uses the '053 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Exs. 167, 171.

### 9.    Dirani Design's Unlawful and Unfair Acts

221.    Dirani Design sells for importation, imports, and/or sells after importation at least the "Purple Pillow Made from TPE with Adjustable Booster, Cooling Cervical Bed Pillows for Neck and Shoulder Pain Sleeping, Non-Pressure, Anti-Soring, Hypoallergenic, Ultra Durable" ("Purple Pillow") and the "Purple Pillow with Purple Q Hyper-Elastic Grid and Natural Latex, Support You with Our Awesome Bed Pillow, Firm Supportive Pillow" ("Purple Pillow with Purple Q") pillows, each of which are knock-offs of Purple products.  The "Purple Pillow" pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.  A material

portion of the exterior of the "Purple Pillow with Purple Q" pillow cushion is made of purple elastomer material formed in a repetitive grid pattern.

222.    Dirani Design sells products online via at least the Amazon website.  Relevant images of the "Purple Pillow" and the "Purple Pillow with Purple Q" pillows that has been advertised on the Amazon website include:

 

 

*See* Exs. 175, 179.

223.    At least the Dirani Design "Purple Pillow" and the "Purple Pillow with Purple Q" pillows infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Dirani Design's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Dirani Design, and/or as to the origin, sponsorship, or approval of the pillow and Dirani Design's commercial activities by Purple.

224.    The Dirani Design "Purple Pillow" pillow further infringes at least claims 1, 3, 4, 6, 10, and 12 of the '837 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 104.

225.    The Dirani Design "Purple Pillow" and the "Purple Pillow with Purple Q" pillows and Dirani Design's commercial activities associated with selling for importation, importing, and/or selling after importation the Dirani Design "Purple Pillow" and the "Purple Pillow with Purple Q" pillows further infringe the '556 Mark.  Specifically, product packaging containing these pillows utilizes the '556 Mark.  *See, e.g.*, Exs. 178, 182.  Further, Dirani Design uses the '556 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Exs. 175, 179.

### 10.    Epsilon/Husdow's Unlawful and Unfair Acts

226.    Epsilon/Husdow sells for importation, imports, and/or sells after importation at least the "Breathable neck head massage tpe memory gel pectin pillow tpe pectin gel memory neck tube honecomb hex latex pillow" ("Honeycomb Hex Latex Pillow"), which is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

227.    Epsilon/Husdow sells products online via at least the Alibaba website.  Relevant images of the "Honeycomb Hex Latex Pillow" that has been advertised on the Alibaba website include:

 

*See* Ex. 183.

228.    At least the Epsilon/Husdow "Honeycomb Hex Latex Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Epsilon/Husdow's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Epsilon/Husdow, and/or as to the origin, sponsorship, or approval of the pillow and Epsilon/Husdow's commercial activities by Purple.

229.    The Epsilon/Husdow "Honeycomb Hex Latex Pillow" pillow cushions further infringe the D092 Patent.  Claim charts detailing these infringements are submitted herewith as Exhibit 73.

230.    The Epsilon/Husdow "Honeycomb Hex Latex Pillow" further infringe at least claims 18, 19, 21–25, 27–29, and 33 of the '445 Patent.  Claim charts detailing such infringements are submitted herewith as Exhibit 86.

### 11.    GWVJYQG's Unlawful and Unfair Acts

231.    GWVJYQG sells for importation, imports, and/or sells after importation at least the "No Pressure Pillow TPE Pectin Pillow Neck Pillow Gel Black Technology Pillow No pressure Purple Waxy Pillows Honeycomb" pillow ("Purple Waxy Pillow"), which is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

232.    GWVJYQG sells products online via at least the AliExpress website.  Relevant images of the "Purple Waxy Pillow" that has been advertised on the AliExpress website include:



*See* Ex. 187.

233.    At least the GWVJYQG "Purple Waxy Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because GWVJYQG's use of the Purple Trade Dress in connection with the pillow is likely to

cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association
of Purple with the pillow and/or GWVJYQG, and/or as to the origin, sponsorship, or approval of
the pillow and GWVJYQG's commercial activities by Purple.

234.    The GWVJYQG "Purple Waxy Pillow" pillow further infringes at least claims 18,
19, 21–24, 27, and 29 of the '445 Patent.  A claim chart detailing this infringement is submitted
herewith as Exhibit 87.

235.    The GWVJYQG "Purple Waxy Pillow," and GWVJYQG's commercial activities
associated with selling for importation, importing, and/or selling after importation this pillow,
further infringe the '556 Mark.  Specifically, GWVJYQG at least uses the '556 Mark on point-of-
sale websites advertising these pillows.  *See, e.g.*, Ex. 187.

### 12.    Hanchuan's Unlawful and Unfair Acts

236.    Hanchuan sells for importation, imports, and/or sells after importation at least the
"Gel Seat Cushion Comfort Honeycomb Egg Crate Design Gel Pad Provides Excellent Support
For Lower Back, Spine, Hips Promotes Venting & Good Sitting Posture For Office Chair Car
Sitter Wheelchair" seat cushion ("Gel Seat Cushion"), which is a knock-off of Purple products.
These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

237.    Hanchuan sells the "Gel Seat Cushion" seat cushions at least on Amazon.  A
relevant image from the Amazon website, as well as the seat cushions that have been advertised
and sold on Amazon, is shown below:



*See* Ex. 191.

238.    At least the Hanchuan "Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Hanchuan's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Hanchuan, and/or as to the origin, sponsorship, or approval of the seat cushion and Hanchuan's commercial activities by Purple.

### 13.    Haosduo's Unlawful and Unfair Acts

239.    Haosduo sells for importation, imports, and/or sells after importation at least the "Cool Summer Neck Cervical Pillow (Standard)" ("Cool Summer Neck") and the "Cool Summer Neck Cervical Pillow (Cervical Curve)" ("Cervical Curve") pillows, which are knock-offs of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

240.    Haosduo sells products online via at least the Amazon website.  Relevant images of the "Cool Summer Neck" and the "Cervical Curve" pillows that has been advertised on the Amazon website include:



*See* Exs. 195, 199.

241.    At least the Haosduo "Cool Summer Neck" and "Cervical Curve" pillows infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Haosduo's use of the Purple Trade Dress in connection with the pillows is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Haosduo, and/or as to the origin, sponsorship, or approval of the pillow and Haosduo's commercial activities by Purple.

242.     The Haosduo "Cool Summer Neck" pillow further infringes at least claims 18, 19, 21–24, and 27–29 of the '445 Patent.   A claim chart detailing this infringement is submitted herewith as Exhibit 88.

243.     The Haosduo "Cervical Curve" pillow further infringes at least claims 18, 19, and 21–29 of the '445 Patent.   A claim chart detailing this infringement is submitted herewith as Exhibit 89.

### 14.     Helishy's Unlawful and Unfair Acts

244.     Helishy sells for importation, imports, and/or sells after importation at least the "Gel Enhanced Seat Cushion - Double Thick Orthopedic Seat Cushion with Non-Slip Cover - Office Chair Car Seat Cushion - Tailbone Cushion - Coccyx Cushion - Sciatica Pillow for Sitting" seat cushion ("Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

245.      Helishy sells the "Gel Seat Cushion" seat cushions at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 203.

246.    At least the Helishy "Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Helishy's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Helishy, and/or as to the origin, sponsorship, or approval of the seat cushion and Helishy's commercial activities by Purple.

### 15.    HSOAR's Unlawful and Unfair Acts

247.    HSOAR sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion for Long Sitting—Back, Sciatica, Hip, Tailbone Pain Relief Cushion—Gel Seat Cushion for Office Chair, Cars, Long Trips—Egg Seat Gel Cushion for Wheelchair Pressure Relief" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

248.    HSOAR sells the "Purple Gel Seat Cushion" seat cushions at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 207.

249.    At least the HSOAR "Purple Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because HSOAR's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or HSOAR, and/or as to the origin, sponsorship, or approval of the seat cushion and HSOAR's commercial activities by Purple.

250.    The HSOAR "Purple Gel Seat Cushion," and HSOAR's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Seat Cushion," further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark. *See, e.g.*, Ex. 210.  Further, HSOAR uses the '053 Mark on point-of-sale websites advertising these cushions. *See, e.g.*, Ex. 207.

### 16.    HSSGGV's Unlawful and Unfair Acts

251.    HSSGGV sells for importation, imports, and/or sells after importation at least the "Gel seat cushion, enhanced double-layer non-slip cushion, purple seat cushion, Help in Relieving Back Pain & Sciatica Pain, Seat Cushion for The Car, Office, Wheelchair & Chair. Breathable, Durable, Portable" seat cushion ("Gel Seat Cushion"), which is a knock-off of Purple products. These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

252.     HSSGGV sells the "Gel Seat Cushion" seat cushions on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 211.

253.     At least the HSSGGV "Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because HSSGGV's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or HSSGGV, and/or as to the origin, sponsorship, or approval of the seat cushion and HSSGGV's commercial activities by Purple.

### 17.     JollyPop's Unlawful and Unfair Acts

254.     JollyPop sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion for Long Sitting, Cool Thick Gel Seat Cushion with Non-Slip Cover, for Office Chair Car Wheelchair to Pressure Relief" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

255.    JollyPop sells the "Purple Gel Seat Cushion" at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 215.

256.    At least the JollyPop "Purple Gel Seat Cushion" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because JollyPop's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or JollyPop, and/or as to the origin, sponsorship, or approval of the seat cushion and JollyPop's commercial activities by Purple.

257.    The JollyPop "Purple Gel Seat Cushion" and JollyPop's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Seat Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark.  *See, e.g.*, Ex. 218.  Further, JollyPop uses the '053 Mark on point-of-sale websites advertising these cushions.  *See, e.g.*, Ex. 215.

### 18.   JOOM's Unlawful and Unfair Acts

258.   JOOM sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion for Long Sitting – Back, Sciatica, Hip, Tailbone Pain Relief Cushion – Gel Seat Cushion for Office Chair, Cars, Long Trips – Egg Seat Gel Cushion for Wheelchair Pressure Relief" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

259.   JOOM sells the "Purple Gel Seat Cushion" seat cushions on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 219.

260.   At least the JOOM "Purple Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because JOOM's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of Purple with the seat cushion and/or JOOM, and/or as to the origin, sponsorship, or
approval of the seat cushion and JOOM's commercial activities by Purple.

261.    The JOOM "Purple Gel Seat Cushion" and JOOM's commercial activities
associated with selling for importation, importing, and/or selling after importation the "Purple Gel
Seat Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these
cushions utilizes the '053 Mark.  *See, e.g.*, Ex. 222.  Further, JOOM uses the '053 Mark on point-
of-sale websites advertising these cushions.  *See, e.g.*, Ex. 219.

### 19.    JSGM's Unlawful and Unfair Acts

262.    JSGM sells for importation, imports, and/or sells after importation at least the "TPE
Material Sleep Pillow high Elastic Pillow Cervical Vertebra Super Soft and Comfortable Sleep
Pillow Cool Pillow bedding-Purple/60x40 10 12cm" pillow ("Purple TPE Pillow"), which is a
knock-off of Purple products.  A material portion of the exterior of the "Purple TPE Pillow" pillow
cushions are made of purple elastomer material formed in a repetitive grid pattern.

263.    A relevant image of the "Purple TPE Pillow" that has been advertised on the
Amazon website, as well as the pillows that have been advertised and sold on Amazon, is shown
below:



*See* Ex. 223.

264.    At least the JSGM "Purple TPE Pillow" infringes the Purple Trade Dress and
otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least

because JSGM's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or JSGM, and/or as to the origin, sponsorship, or approval of the pillow and JSGM's commercial activities by Purple.

265.    The JSGM "Purple TPE Pillow" pillow further infringes at least claims 1–4, 10, 11, 19, and 20 of the '837 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 105.

266.    The JSGM "Purple TPE Pillow" pillows, and JSGM's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple TPE Pillow" pillows, further infringe the '556 Mark.  Specifically, product packaging containing these pillows utilizes the '556 Mark.  *See, e.g.*, Ex. 226.  Further, JSGM uses the '556 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Ex. 223.

### 20.    Kinglei's Unlawful and Unfair Acts

267.    Kinglei sells for importation, imports, and/or sells after importation at least the "Purple Neck Pillow Soft Responsive for Deep Sleepers 360° Grid TPE ECP Friendly Moisture Wick Comfortable (Standard)" pillow ("Purple Neck Pillow"), which is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

268.    Kinglei sells products online via at least the Amazon website.  Relevant images from the Amazon website, as well as the pillow that is advertised and sold on the Amazon website, are shown below:

 

*See* Ex. 227

269.     At least the Kinglei "Purple Neck Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Kinglei's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Kinglei, and/or as to the origin, sponsorship, or approval of the pillow and Kinglei's commercial activities by Purple.

270.     The Kinglei "Purple Neck Pillow" pillow cushion further infringes the D092 Patent. A claim chart detailing this infringement is submitted herewith as Exhibit 74.

271.     The Kinglei "Purple Neck Pillow" further infringes at least claims 18, 19, 21–25, 27–29, and 33 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 90.

272.     The Kinglei "Purple Neck Pillow" and Kinglei's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Neck Pillow" further infringe the '556 Mark.  Specifically, product packaging containing these pillows utilizes the '556 Mark.  *See, e.g.*, Ex. 230.  Further, Kinglei uses the '556 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Ex. 227.

### 21.     KJTOC/Fashion Lotus's Unlawful and Infringing Acts

273.    KJTOC/Fashion Lotus sells for importation, imports, and/or sells after importation at least the "Cooling Pillows for Sleeping -Small Size, Breathable Bed Purple Pillow with Removable Cover, Good Neck Support to Relief Migraine Neck Pain, A Light Napping Pillow for Back Stomach or Side Sleepers" pillow ("Purple Pillow"), which is a knock-off of Purple products. The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

274.    KJTOC/Fashion Lotus sells products online via at least the Amazon website.  A relevant image from the Amazon website, as well as the pillow that is advertised and sold on the Amazon website, is shown below:



*See* Ex. 231.

275.    At least the KJTOC/Fashion Lotus "Purple Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because KJTOC/Fashion Lotus's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or KJTOC/Fashion Lotus, and/or as to the origin, sponsorship, or approval of the pillow and KJTOC/Fashion Lotus's commercial activities by Purple.

276.     The KJTOC/Fashion Lotus "Purple Pillow" further infringes at least claims 18, 19, and 29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 91.

277.     The KJTOC/Fashion Lotus "Purple Pillow" and KJTOC/Fashion Lotus's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Pillow" further infringe the '556 Mark.  Specifically, KJTOC/Fashion Lotus at least uses the '556 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Ex. 231.

### 22.     KYSMOTIC's Unlawful and Unfair Acts

278.     KYSMOTIC sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion for Long Sitting, Soft & Breathable, Gel Cushion for Wheelchair Reduce Sweat, Gel Chair Cushion for Hip Pain, Gel Seat Cushion for Office Chair, Gel Car Seat Cushion" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

279.     KYSMOTIC sells the "Purple Gel Seat Cushion" on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 235.

280.    At least the KYSMOTIC "Purple Gel Seat Cushion" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because KYSMOTIC's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or KYSMOTIC, and/or as to the origin, sponsorship, or approval of the seat cushion and KYSMOTIC's commercial activities by Purple.

281.    The KYSMOTIC "Purple Gel Seat Cushion" and KYSMOTIC's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Seat Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark.  *See, e.g.*, Ex. 238.  Further, KYSMOTIC uses the '053 Mark on point-of-sale websites advertising these cushions.  *See, e.g.*, Ex. 235.

### 23.    Leadfar's Unlawful and Unfair Acts

282.    Leadfar sells for importation, imports, and/or sells after importation at least the "Gel TPE Grid Silicone Washable Pillow 3D TPE Cool Gel Pillow for Sleeping Neck Support

Pillow" pillow ("Gel TPE Grid Pillow"), which is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

283.    Leadfar sells the "Gel TPE Grid Pillow" at least on the Alibaba website.  Relevant images of the "Gel TPE Grid Pillow" that has been advertised on the Alibaba website, as well as the pillows that have been advertised and sold on Alibaba, are shown below:



*See* Ex. 239.

284.    At least the Leadfar "Gel TPE Grid Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Leadfar's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Leadfar, and/or as to the origin, sponsorship, or approval of the pillow and Leadfar's commercial activities by Purple.

285.    The Leadfar "Gel TPE Grid Pillow" pillow further infringes at least claims 18, 19, 21–29, and 33 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 92.

### 24.    Liu/Husdow's Unlawful and Unfair Acts

286.    Liu/Husdow sells for importation, imports, and/or sells after importation at least the "LIU TPE Elastomer Material Air Pillow Set Hollow Triangle Breathable Cushion Kit Bedding Sets Memory Sleeping Pillow for Neck Pain Free Pillowcase Included" pillow ("Air Pillow"), which is a knock-off of Purple products.  The pillow cushion is made of purple elastomer material formed in a repetitive grid pattern.

287.    Liu/Husdow sells products online via at least the Amazon website.  A relevant image of the "Air Pillow" that has been advertised on the Amazon website, as well as the pillows that have been advertised and sold on Amazon, is shown below:



*See* Ex. 243.

288.    At least the Liu/Husdow "Air Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Liu/Husdow's use of the Purple Trade Dress in connection with the pillow is likely to

cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Liu/Husdow, and/or as to the origin, sponsorship, or approval of the pillow and Liu/Husdow's commercial activities by Purple.

289.    The Liu/Husdow "Air Pillow" pillow cushions further infringe the D092 Patent. Claim charts detailing these infringements are submitted herewith as Exhibit 75.

290.    The Liu/Husdow "Air Pillow" pillow cushions further infringe at least claims 18, 19, 21–25, 27–29, and 33 of the '445 Patent.  Claim charts detailing such infringements are submitted herewith as Exhibits 93.

### 25.    MZSSI's Unlawful and Unfair Acts

291.    MZSSI sells for importation, imports, and/or sells after importation at least the "Gel Seat Cushion, Double Thick Big Egg Seat Cushion, Ventilation Breathable Honeycomb Purple Gel Seat Cushion for Wheelchair Car Seat Home Office Chairs (Purple)" seat cushion ("Purple Gel Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

292.    MZSSI sells the "Purple Gel Cushion" at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, are shown below:



*See* Ex. 247.

293.     At least the MZSSI "Purple Gel Cushion" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because MZSSI's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or MZSSI, and/or as to the origin, sponsorship, or approval of the seat cushion and MZSSI's commercial activities by Purple.

294.     The MZSSI "Purple Gel Cushion" and MZSSI's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark.  *See, e.g.*, Ex. 250.  Further, MZSSI uses the '053 Mark on point-of-sale websites advertising these cushions.  *See, e.g.*, Ex. 247.

### 26.     OMCOZY's Unlawful and Unfair Acts

295.     OMCOZY sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion, Cooling seat Cushion Thick Big Breathable Honeycomb Design Absorbs Pressure Points Seat Cushion with Non-Slip Cover Gel Cushion for Office Chair Home Cars Wheelchair" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

296.     OMCOZY sells the "Purple Gel Seat Cushion" at least on Amazon.  Relevant images from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, are shown below:

 

*See* Ex. 251.

297.    At least the OMCOZY "Purple Gel Seat Cushion" infringes the Purple Trade Dress

and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least

because OMCOZY's use of the Purple Trade Dress in connection with the seat cushion is likely

to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association

of Purple with the seat cushion and/or OMCOZY, and/or as to the origin, sponsorship, or approval

of the seat cushion and OMCOZY's commercial activities by Purple.

298.    The OMCOZY "Purple Gel Seat Cushion" and OMCOZY's commercial activities

associated with selling for importation, importing, and/or selling after importation the "Purple Gel

Seat Cushion" further infringe the '053 Mark.  Specifically, OMCOZY at least uses the '053 Mark

on point-of-sale websites advertising these cushions.  *See, e.g.*, Ex. 251.

### 27.    Rongbaor's Unlawful and Unfair Acts

299.    Rongbaor sells for importation, imports, and/or sells after importation at least the

"Extra-Large Gel Seat Cushion, Breathable Honeycomb Design Pain Relief Egg Seat Cushion -

Home Office Chair Cars Wheelchair (Lightpurple, 18.5x16.5x1.6 inches)" seat cushions ("Gel

Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple

elastomer material formed in a repetitive grid pattern.

300.   Rongbaor sells the "Gel Seat Cushion" seat cushions at least on Amazon.  Relevant images from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, are shown below:

 

*See* Ex. 255.

301.   At least the Rongbaor "Gel Seat Cushion" seat cushions infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Rongbaor's use of the Purple Trade Dress in connection with the seat cushions is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Rongbaor, and/or as to the origin, sponsorship, or approval of the seat cushion and Rongbaor's commercial activities by Purple.

**28.   Sayouame's Unlawful and Unfair Acts**

302.   Sayouame sells for importation, imports, and/or sells after importation at least the "Purple Jelly Pillow" pillow ("Purple Jelly Pillow"), which is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

303.    Sayouame sells products online via at least the Amazon website.  A relevant image from the Amazon website, as well as the pillow that is advertised and sold on the Amazon website, are shown below:



*See* Ex. 259.

304.    At least the Sayouame "Purple Jelly Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Sayouame's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Sayouame, and/or as to the origin, sponsorship, or approval of the pillow and Sayouame's commercial activities by Purple.

305.    The Sayouame "Purple Jelly Pillow" further infringes at least claims 18, 19, and 21–29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 94.

306.    The Sayouame "Purple Jelly Pillow" and Sayouame's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Jelly

Pillow" further infringe the '556 Mark.  Specifically, Sayouame at least uses the '556 Mark on point-of-sale websites advertising these pillows.  *See, e.g.*, Ex. 259.

### 29.   Sbriun's Unlawful and Unfair Acts

307.   Sbriun sells for importation, imports, and/or sells after importation at least the "Extra Large Comfort Office Chair Gel Seat Cushion Pillow - Enhanced Egg Seat Cushion for Long Sitting with Non-Slip Cover - Desk Chair Car Seat Cushion for Back, Coccyx & Tailbone Pain Relief" seat cushions ("Extra Large Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

308.   Sbriun sells the "Extra Large Gel Seat Cushion" seat cushions at least on Amazon. Relevant images from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, are shown below:



*See* Ex. 263.

309.   At least the Sbriun "Extra Large Gel Seat Cushion" seat cushions infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C.

§ 1525(a) at least because Sbriun's use of the Purple Trade Dress in connection with the seat cushions is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Sbriun, and/or as to the origin, sponsorship, or approval of the seat cushion and Sbriun's commercial activities by Purple.

### 30.    SelectSoma's Unlawful and Unfair Acts

310.    SelectSoma sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion for Long Sitting – Back, Sciatica, Hip, Tailbone Pain Relief Cushion – Gel Seat Cushion for Office Chair, Cars, Long Trips – Egg Seat Gel Cushion for Wheelchair Pressure Relief" seat cushions ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

311.    SelectSoma sells the "Purple Gel Seat Cushion" at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 267.

312.    At least the SelectSoma "Purple Gel Seat Cushion" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because SelectSoma's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or SelectSoma, and/or as to the origin, sponsorship, or approval of the seat cushion and SelectSoma's commercial activities by Purple.

313.    The SelectSoma "Purple Gel Seat Cushion" and SelectSoma's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Seat Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark. *See, e.g.*, Ex. 270.  Further, SelectSoma uses the '053 Mark on point-of-sale websites advertising these cushions. *See, e.g.*, Ex. 267.

## 31.    Shengyang's Unlawful and Unfair Acts

314.    Shengyang sells for importation, imports, and/or sells after importation at least the "Gel Breathable Thick Pillow, Non-Slip Cover,Honeycomb Design Absorbs Pressure Points Pain Relief Pillow, for Home, Summer-Kid Triangle" pillow ("Gel Breathable Thick Pillow"), which is a knock-off of Purple products.  These pillow cushions are made of purple elastomer material formed in a variety of repetitive grid patterns, as shown for example below.

315.    Shengyang sells products online via at least the Amazon website.  A relevant image from the Amazon website, as well as the "Gel Breathable Thick Pillow" pillows that have been advertised and sold on the Amazon website, is shown below:



*See* Ex. 271.

316.    At least the Shengyang "Gel Breathable Thick Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Shengyang's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Shengyang, and/or as to the origin, sponsorship, or approval of the pillow and Shengyang's commercial activities by Purple.

### 32.    Sofa In's Unlawful and Unfair Acts

317.    Sofa In sells for importation, imports, and/or sells after importation at least the "Natural Latex Pillow for Sleeping" pillow, which is a knock-off of Purple products.  These pillow cushions are made of purple elastomer material formed in a variety of repetitive grid patterns, as shown for example below.

318.    Sofa In sells products online via at least the Amazon website.  A relevant image from the Amazon website, as well as the "Natural Latex Pillow for Sleeping" pillows that have been advertised and sold on the Amazon website, is shown below:



*See* Ex. 275.

319.    At least the Sofa In "Natural Latex Pillow for Sleeping" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Sofa In's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or Sofa In, and/or as to the origin, sponsorship, or approval of the pillow and Sofa In's commercial activities by Purple.

320.    The Sofa In "Natural Latex Pillow for Sleeping" pillow cushion also infringes the D092 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 76.

321.    The Sofa In "Natural Latex Pillow for Sleeping" pillow further infringes at least claims 18, 19, 21–24, 27, and 29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 96.

### 33.    Suptempo's Unlawful and Unfair Acts

322.    Suptempo sells for importation, imports, and/or sells after importation at least the "Gel Seat Cushion, Office Chair Cushion, Double Thick Breathable Honeycomb Design with 2 Non-Slip Cover, Cooling seat Cushion for Home Office Computer Desk Wheelchair to Relief

Sciatica Pain" seat cushion ("Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

323.    Suptempo sells the "Gel Seat Cushion" seat cushions on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 279.

324.    At least the Suptempo "Gel Seat Cushion" seat cushion infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Suptempo's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Suptempo, and/or as to the origin, sponsorship, or approval of the seat cushion and Suptempo's commercial activities by Purple.

### 34.    TR/Musite's Unlawful and Unfair Acts

325.    TR/Musite sells for importation, imports, and/or sells after importation at least the "Home Super Soft Good flexibility Purple color washable white pillow cover Pillow" ("Home Super Soft Pillow"), the "3d gel honeycomb pillow with good air circulation tpe Washable pillow

Thermo plastic Elastomer Purple Pillow" ("Elastomer Purple Pillow"), and the "Celebrities Washable Thermoplastic Elastomer purple standard Countour tpe pillow for Sleeping" ("Celebrities Pillow"), among many others offered on the Alibaba.com website (collectively, the "Infringing TR/Musite Pillows"), all of which are knock-offs of Purple products.  The Infringing TR/Musite Pillows' pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

326.    Relevant images of the Infringing TR/Musite Pillows that have been advertised on the Alibaba website, as well as the pillows that have been advertised and sold on Alibaba, are shown below:



*See* Exs. 283, 286.

327.    At least the Infringing TR/Musite Pillows infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because the TR/Musite's use of the Purple Trade Dress in connection with the pillows is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillows and/or TR/Musite, and/or as to the origin, sponsorship, or approval of the pillow and TR/Musite's commercial activities by Purple.

328.    The Infringing TR/Musite Pillows also infringe the D092 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 77.

329.    The Infringing TR/Musite Pillows further infringe at least claims 1–15, 18, 19, 21–32, and 35 of the '445 Patent.  Claim charts detailing such infringements are submitted herewith as Exhibit 97.

330.    The Infringing TR/Musite Pillows and TR/Musite's commercial activities associated with selling for importation, importing, and/or selling after importation the Infringing TR/Musite Pillows further infringe the '556 Mark.  Specifically, TR/Musite at least uses the '556 Mark on point-of-sale websites advertising these cushions.  *See, e.g.*, Exs. 283, 287, 291.

### 35.    Uknow's Unlawful and Unfair Acts

331.    Uknow sells for importation, imports, and/or sells after importation at least the "Purple Gel Seat Cushion for Long Sitting—Back, Sciatica, Hip, Tailbone Relief Cushion—Gel Seat Cushion for Office Chair, Cars, Long Trips—Egg Seat Cushion for Wheelchair Pressure Relief" seat cushion ("Purple Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

332.    Uknow sells the "Purple Gel Seat Cushion" at least on Amazon.  A relevant image from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, is shown below:



*See* Ex. 295.

333.    At least the Uknow "Purple Gel Seat Cushion" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because Uknow's use of the Purple Trade Dress in connection with the seat cushion is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or Uknow, and/or as to the origin, sponsorship, or approval of the seat cushion and Uknow's commercial activities by Purple.

334.    The Uknow "Purple Gel Seat Cushion" and Uknow's commercial activities associated with selling for importation, importing, and/or selling after importation the "Purple Gel Seat Cushion" further infringe the '053 Mark.  Specifically, product packaging containing these cushions utilizes the '053 Mark.  *See, e.g.*, Ex. 298.  Further, Uknow uses the '053 Mark on point-of-sale websites advertising these cushions.  *See, e.g.*, Ex. 295.

### 36.    WEADDU's Unlawful and Unfair Acts

335.    WEADDU sells for importation, imports, and/or sells after importation at least the "Outdoor waterproof beauty pillows custom ergonomic tpe pillow" pillow ("TPE Pillow"), which

is a knock-off of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

336.   WEADDU sells the "TPE Pillow" at least on Alibaba.  A relevant image of the "TPE Pillow" that has been advertised on the Alibaba website, as well as the pillows that have been advertised and sold on Alibaba, is shown below:



*See* Ex. 299.

337.   At least the WEADDU "TPE Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because WEADDU's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or WEADDU, and/or as to the origin, sponsorship, or approval of the pillow and WEADDU's commercial activities by Purple.

338.   The WEADDU "TPE Pillow" pillow cushion also infringes the D092 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 78.

339.   The WEADDU "TPE Pillow" pillow further infringes at least claims 18, 19, 21–25, 27–29, and 33 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 98.

### 37.    YRDZ's Unlawful and Unfair Acts

340.    YRDZ sells for importation, imports, and/or sells after importation at least the "TPE Pectin Pillow No Pressure Pillow Neck Pillow Black Technology No Pressure Pillow, Used to Relieve Neck Fatigue and Relieve Pain" ("TPE Pectin Pillow") and the "Latex Pillow No Pressure Pillow Core TPE Decompression Cervical Pillow Cervical Vertebra Gel Washable Pillow Core" ("Latex Pillow") pillows, which are knock-offs of Purple products.  The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

341.    YRDZ sells the "TPE Pectin Pillow" and the "Latex Pillow" pillows on Amazon. Relevant images of the "TPE Pectin Pillow" and "Latex Pillow" pillows that has been advertised on the Amazon website include:

 

*See* Ex. 303, 307.

342.    At least the YRDZ "TPE Pectin Pillow" and "Latex Pillow" pillows infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because YRDZ's use of the Purple Trade Dress in connection with the pillows is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of Purple with the pillows and/or YRDZ, and/or as to the origin, sponsorship, or approval of the pillows and YRDZ's commercial activities by Purple.

343.    The YRDZ "TPE Pectin Pillow" pillow further infringes at least claims 18, 19, 21–24, 27, and 29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 99.

344.    The YRDZ "Latex Pillow" pillow further infringes at least claims 18, 19, 21–24, and 27–29 of the '445 Patent.  A claim chart detailing this infringement is submitted herewith as Exhibit 100.

### 38.    YWSHUF's Unlawful and Unfair Acts

345.    YWSHUF sells for importation, imports, and/or sells after importation at least the "Gel Seat Cushion for Long Sitting with Non-Slip Cover - Double Thick Gel Seat Cushions for Hip Pain & Pressure Relief, Breathable Chair Cushion for Office Chair, Car, Wheelchair, Long Trips" seat cushions ("Gel Seat Cushion"), which is a knock-off of Purple products.  These seat cushions are made of purple elastomer material formed in a repetitive grid pattern.

346.    YWSHUF sells the "Gel Seat Cushion" on Amazon.  Relevant images from the Amazon website, as well as the seat cushions that have been advertised and sold on Amazon, are shown below:




*See* Ex. 311.

347.   At least the YWSHUF "Gel Seat Cushion" seat cushions infringe the Purple Trade Dress and otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because YWSHUF's use of the Purple Trade Dress in connection with the seat cushions is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the seat cushion and/or YWSHUF, and/or as to the origin, sponsorship, or approval of the seat cushion and YWSHUF's commercial activities by Purple.

### 39.   ZY/Husdow's Unlawful and Unfair Acts

348.   ZY/Husdow sells for importation, imports, and/or sells after importation at least the "High Elasticity Correction Neck Pain Massage Memory Sleeping Pillow Multifunctional Orthopedic TPE Gel Pillow" pillow ("TPE Gel Pillow"), which is a knock-off of Purple products. The pillow cushions are made of purple elastomer material formed in a repetitive grid pattern.

349.   ZY/Husdow sells the "TPE Gel Pillow" on the Alibaba website.  Relevant images of the "TPE Gel Pillow" that has been advertised on the Alibaba website include:

 

*See* Ex. 315.

350.    At least the ZY/Husdow "TPE Gel Pillow" infringes the Purple Trade Dress and otherwise constitutes unfair competition within the meaning of 15 U.S.C. § 1525(a) at least because ZY/Husdow's use of the Purple Trade Dress in connection with the pillow is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Purple with the pillow and/or ZY/Husdow, and/or as to the origin, sponsorship, or approval of the pillow and ZY/Husdow's commercial activities by Purple.

351.    The ZY/Husdow "TPE Gel Pillow" pillow cushions further infringe the D092 Patent.  Claim charts detailing these infringements are submitted herewith as Exhibit 79.

352.    The ZY/Husdow "TPE Gel Pillow" pillow cushions further infringe at least claims 18, 19, 21–25, 27–29, and 33 of the '445 Patent.  Claim charts detailing such infringements are submitted herewith as Exhibit 101.

## X.    SPECIFIC INSTANCES OF RESPONDENTS' UNFAIR IMPORTATIONS AND SALES

353.    Upon information and belief, the products-at-issue are manufactured outside of the United States.  The products-at-issue are then sold for importation into the United States, imported into the United States, and/or sold within the United States after importation.

354.    As detailed below and in the accompanying Declaration of Tamara Rodriguez (Ex. 106) ("Rodriguez Decl."), products-at-issue were individually purchased through on-line retail platforms such as Amazon and Alibaba and the shipments of such products were received in Utah. Representative samples of accused products ordered and received are contained in Physical Exhibits P12–P64.[3]

355.    On or around October 20, 2021, a purchase of Aduken's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website. The Amazon website indicates that the Amazon seller for this product (referred to as "Merayke") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 4 & Exs. 107–10.

356.    On or around October 20, 2021, a purchase of a BBK accused product, the "Super Soft Purple Pillow," was made in the United States on behalf of Purple through the Alibaba website.  The Alibaba website indicates that the Alibaba seller for this product (referred to as "BBK") has a business address located in China.  The product was received in Utah after the order

---

[3] Purple understands that, in light of the ongoing COVID-19-related pandemic, the Commission is not accepting the submission of physical exhibits at this time.  Purple is therefore providing placeholder exhibits for such physical exhibits at this time, but will submit physical exhibits to the Commission upon request.

was made.  The "Super Soft Purple Pillow" received bore a label indicating that the pillow was made in "NANTONG, CHINA."  *See generally* Rodriguez Decl. ¶ 5 & Exs. 111–14.

357.    On or around October 20, 2021, a purchase of a Bedmate-U accused product, the "FitNek Pillow," was made in the United States on behalf of Purple through the Indiegogo website (https://www.indiegogo.com/projects/fitnek-pillow-say-goodbye-to-sleepless-nights#/).      The Bedmate-U website (www.bedmate-u.com) indicates that Bedmate-U has a business address located in the Republic of Korea.  The Indiegogo website indicates that Bedmate-U ships its FitNek pillows "worldwide."  The receipt for the FitNek pillow purchased included a $35.00 charge for "Shipping (United States)."  The product was received in Payson, Utah after the order was made. The shipping packaging containing the FitNek pillow that was received indicated that the shipper was located in the Republic of Korea.  *See generally* Rodriguez Decl. ¶ 6 & Exs. 115–18.

358.    On or around October 20, 2021, a purchase of a Berklan accused product, the "Purple Pillow," was made in the United States on behalf of Purple through the Amazon website. The Amazon website indicates that the Amazon seller for this product (referred to as "Berklan") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Pillow" received bore a label indicating that the pillow was "Made in China." *See generally* Rodriguez Decl. ¶ 7 & Exs. 119–22; *see also id.* ¶¶ 8–11 & Exs. 123–46 (documenting similar purchases of other accused imported Berklan products).

359.    On or around October 20, 2021, a purchase of Bingyee's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website. The Amazon website indicates that the Amazon seller for this product (referred to as "bingyee") has a business address located in China.  The product was received in Utah after the order was

made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 12 & Exs. 147–50.

360.    On or around October 20, 2021, a purchase of a Birtimo accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website. The Amazon website indicates that the Amazon seller for this product (referred to as "MANAM JUB") has a business address located in China.  The Amazon website indicates that the "Country of Origin" of the product is China.  The product was received in Utah after the order was made. The "Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China." *See generally* Rodriguez Decl. ¶ 13 & Exs. 151–54.

361.    On or around October 20, 2021, a purchase of Buysigo's accused product, the "Purple Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "buysigo") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 14 & Exs. 155–58.

362.    On or around October 20, 2021, a purchase of a DAPU accused product, the "Purple Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "DAPU") has a business address located in China.  The product was received in Utah after the order was made. The "Purple Pillow" received bore a label indicating that the pillow was "Made in China *See generally* Rodriguez Decl. ¶ 15 & Exs. 159–62; *see also id.* ¶¶ 16–17 & Exs. 163–74 (documenting similar purchases of other accused imported DAPU products).

363.    On or around January 14, 2022, a purchase of Dirani Design's accused product, the "Purple Pillow," was made in the United States on behalf of Purple through the Amazon website. The Amazon website indicates that the Amazon seller for this product (referred to as "Dirani Design") has a business address located in China. The product was received in Utah after the order was made. The "Purple Pillow" received bore a label indicating that the pillow was "Made in China." *See generally* Rodriguez Decl. ¶ 18 & Exs. 175–78; *see also id.* ¶ 19 & Exs. 179–82 (documenting similar purchase of other accused imported Dirani Design product).

364.    On or around October 29, 2021, a purchase of Epsilon/Husdow's accused product, the "Honeycomb Hex Latex Pillow," was made in the United States on behalf of Purple through the Alibaba website. The Alibaba website indicates that the Alibaba seller for this product ("Guangzhou Epsilon Import and Export Co., Ltd.") has a business address and factory located in China. The product was received in Utah after the order was made. The "Honeycomb Hex Latex Pillow" received bore a label indicating that the pillow was "MADE IN CHINA." *See generally* Rodriguez Decl. ¶ 20 & Exs. 183–86.

365.    On or around November 18, 2021, a purchase of GWVJYQG's accused product, the "Purple Waxy Pillow," was made in the United States on behalf of Purple through the AliExpress website. The AliExpress website indicates that the country of origin for this product is China. The shipping packaging containing the pillow that was received indicated that the shipper was located in the People's Republic of China. *See generally* Rodriguez Decl. ¶ 21 & Exs. 187–90.

366.    On or around October 20, 2021, a purchase of Hanchuan's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website. The Amazon website indicates that the Amazon seller for this product (referred to as

"Hanchuan") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 22 & Exs. 191–94.

367.    On or around October 28, 2021, a purchase of Haosduo's accused product, the "Cervical Curve Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Youru E-Commerce Co., Ltd.") has a business address located in China.   The product was received in Utah after the order was made.  The "Cervical Curve Pillow" received bore a label indicating that the cushion was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 23 & Exs. 195–98; *see also id.* ¶ 24 & Exs. 199–202 (documenting similar purchase of other accused imported Haosduo product).

368.    On or around October 20, 2021, a purchase of Helishy's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Super Seat") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received included no tagging or other information reflecting the country of origin.  *See generally* Rodriguez Decl. ¶ 25 & Exs. 203–06.

369.    On or around October 20, 2021, a purchase of HSOAR's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Best Deal") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 26 & Exs. 207–10.

370.    On or around October 20, 2021, a purchase of HSSGGV's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "HSSGGV-US") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 27 & Exs. 211–14.

371.    On or around October 20, 2021, a purchase of JollyPop's accused product, the "Purple Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The product was received in Utah after the order was made.  The "Purple Gel Seat Cushion" received bore a label indicating that the cushion was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 28 & Exs. 215–18.

372.    On or around October 20, 2021, a purchase of JOOM's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Hsoar") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 29 & Exs. 219–22.

373.    On or around January 24, 2022, a purchase of JSGM's accused product, the "TPE Material Sleep Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Chenyi International Trade Store") has a business address located in China.  The product was received in Utah after the order was made.  The "TPE Material Sleep Pillow" received bore a label

indicating that the cushion was "Made in China." *See generally* Rodriguez Decl. ¶ 30 & Exs. 223–26.

374.    On or around October 20, 2021, a purchase of Kinglei's accused product, the "Purple Neck Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "KINGLEI") has a business address located in China.  The Amazon website indicates that the "Country of Origin" for this product is China.  The product was received in Utah after the order was made.  The "Purple Neck Pillow" received included no tagging or other information reflecting the country of origin.  *See generally* Rodriguez Decl. ¶ 31 & Exs. 227–30.

375.    On or around October 20, 2021, a purchase of KJTOC/Fashion Lotus's accused product, the "Purple Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "KJTOC") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Pillow" received received included no tagging or other information reflecting the country of origin.  *See generally* Rodriguez Decl. ¶ 32 & Exs. 231–34.

376.    On or around October 20, 2021, a purchase of KYSMOTIC's accused product, the "Purple Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "KYSMOTIC-US") has a business address located in China.  The product was received in Utah after the order was made.  received included no tagging or other information reflecting the country of origin.  *See generally* Rodriguez Decl. ¶ 33 & Exs. 235–38.

377.    On or around October 29, 2021, a purchase of Leadfar's accused product, the "Gel TPE Grid Pillow," was made in the United States on behalf of Purple through the Alibaba website.

The Alibaba website indicates that the Alibaba seller for this product ("Shenzhen Leadfar Industry Co., Ltd.") has a business address and factory located in China.  The product was received in Utah after the order was made.  The product received bore a label indicating that the pillow was "Made in China."  *See generally* Rodriguez Decl. ¶ 34 & Exs. 239–42.

378.    On or around October 28, 2021, a purchase of Liu/Husdow's accused product, the "Air Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "gfd5556ds") has a business address located in China.  The product was received in Utah after the order was made.  The "Air Pillow" received bore a label indicating that the pillow was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 35 & Exs. 243–46.

379.    On or around October 20, 2021, a purchase of MZSSI's accused product, the "Purple Gel Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "GSAJ") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 36 & Exs. 246–50.

380.    On or around October 20, 2021, a purchase of OMCOZY's accused product, the "Purple Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "omcscds") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 37 & Exs. 251–54.

381.     On or around October 20, 2021, a purchase of a Rongbaor accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Rongbaoer") has a business address located in China.  The product was received in Utah after the order was made.  The "Extra Large Gel Seat Cushion" received bore a label indicating that the cushion was "Made in china."  *See generally* Rodriguez Decl. ¶ 38 & Exs. 255–58.

382.     On or around October 28, 2021, a purchase of Sayouame's accused product, the "Purple Jelly Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "SAYOUAME") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Jelly Pillow" received bore a label indicating that the "ORIGIN ID" of the shipment was an address in China.  *See generally* Rodriguez Decl. ¶ 39 & Exs. 259–62.

383.     On or around October 20, 2021, a purchase of a Sbriun accused product, the "Extra Large Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Ommya") has a business address located in China.  The product was received in Utah after the order was made.  The "Extra Large Gel Seat Cushion" received received included no tagging or other information reflecting the country of origin.  *See generally* Rodriguez Decl. ¶ 40 & Exs. 263–66.

384.     On or around October 20, 2021, a purchase of SelectSoma's accused product, the "Purple Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the product's "Country/Region of Manufacture" is China.  The product was received in Utah after the order was made.  The "Purple Gel Seat Cushion"

received bore a label indicating that the cushion was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 41 & Exs. 267–70.

385.    On or around October 28, 2021, a purchase of Shengyang's accused product, the "Gel Breathable Thick Pillow," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "HaoYDP") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Breathable Thick Pillow" received bore a label written in Chinese characters with the exception of the following language in English:  "china.nantong."  Mailing labels also bore the designation "LAX."  *See generally* Rodriguez Decl. ¶ 42 & Exs. 271–74.

386.    On or around January 24, 2022, a purchase of Sofa In's accused product, the "Natural Latex Pillow for Sleeping," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Global Ocean Trading Company Limited") has a business address located in China. The product was received in Utah after the order was made.  The packaging of the pillow received bore a label indicating that the pillow was "Made in China."  *See generally* Rodriguez Decl. ¶ 43 & Exs. 275–78.

387.    On or around October 20, 2021, a purchase of Suptempo's accused product, the "Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "MAYBRET-US") has a business address located in China.  The product was received in Utah after the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 44 & Exs. 279–82.

388.    On or around October 29, 2021, a purchase of TR/Musite's accused products, the Infringing TR/Musite Pillows, was made in the United States on behalf of Purple through the Alibaba website.   The Alibaba website indicates that the Amazon seller for these products ("Shenzhen Tianrun Materials Co., Ltd.") has a business address and factory located in China.  The products were received in Utah after the order was made.  The Infringing TR/Musite Pillows were received in a box with Chinese characters written on the outside.   The Infringing TR/Musite Pillows also bore labels written in Chinese characters.  *See generally* Rodriguez Decl. ¶ 45 & Exs. 283–94.

389.    On or around October 20, 2021, a purchase of Uknow's accused product, the "Purple Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this product (referred to as "Cooushing") has a business address located in China.  The product was received in Utah after the order was made.  The "Purple Gel Seat Cushion" received bore a label indicating that the cushion was "Made in China."  *See generally* Rodriguez Decl. ¶ 46 & Exs. 295–98.

390.    On or around October 29, 2021, a purchase of WEADDU's accused product, the "TPE Pillow," was made in the United States on behalf of Purple through the Alibaba website. The Alibaba website indicates that the Alibaba seller for this product ("Dongguan Jingrui Silicone Technology Co., Ltd.") has a business address and factory located in China.  The product was received in Utah after the order was made.  The "TPE Pillow" received bore a label indicating that the pillow was "Made in China."  *See generally* Rodriguez Decl. ¶ 47 & Exs. 299–302.

391.    On or around January 24, 2022, a purchase of YRDZ's accused products, the "TPE Pectin Pillow" and the "Latex Pillow" pillows, was made in the United States on behalf of Purple through the Amazon website.  The Amazon website indicates that the Amazon seller for this

product (referred to as "YaRu Wang") has a business address located in China.  The product was
received in Utah after the order was made.  The "TPE Pectin Pillow" and the "Latex Pillow"
pillows received bore labels indicating that the pillows were "Made in China."  *See generally*
Rodriguez Decl. ¶ 48 & Exs. 303–10.

392.    On or around October 20, 2021, a purchase of YWSHUF's accused product, the
"Gel Seat Cushion," was made in the United States on behalf of Purple through the Amazon
website.  The Amazon website indicates that the Amazon seller for this product (referred to as
"XinXinChang") has a business address located in China.  The product was received in Utah after
the order was made.  The "Gel Seat Cushion" received bore a label indicating that the cushion was
"Made in China."  *See generally* Rodriguez Decl. ¶ 49 & Exs. 311–14.

393.    On or around October 29, 2021, a purchase of ZY/Husdow's accused product, the
"TPE Gel Pillow," was made in the United States on behalf of Purple through the Alibaba website.
The Alibaba website indicates that the Alibaba seller for this product ("Hebei Zeyong Technology
Co., Ltd.") has a business address and factory located in China.  The product was received in Utah
after the order was made.  The "TPE Gel Pillow" received bore a label indicating that the pillow
was "MADE IN CHINA."  *See generally* Rodriguez Decl. ¶ 50 & Exs. 315–18.

## XI.    HARMONIZED TARIFF SCHEDULE CLASSIFICATIONS

394.    The products-at-issue are believed to fall within at least one or more of the
following subheadings 9401.80.20, 9401.80.40, 9401.80.60, 9404.90.10, and 9404.90.20 of the
Harmonized Tariff Schedule of the United States.  These classifications are intended for illustrative
purposes only and are not intended to restrict the scope or type of products accused.

## XII.    DOMESTIC INDUSTRY

### A.    Domestic Industry Under 19 U.S.C. §§ 1337(a)(2)–(3)

395.    For purposes of Purple's design patent, registered trademark, and utility patent infringement claims in this action brought under 19 U.S.C. §§ 1337(a)(1)(B) and (C), a domestic industry exists for purposes of 19 U.S.C. §§ 1337(a)(2)–(3).

#### 1.    Technical Prong

396.    At least the Purple® Pillow practices the claimed designs of the D092 Patent, at least one claim of the '445 Patent, and at least one claim of the '837 Patent.  Exemplary images of the Purple® Pillow are shown below:





*See* Exs. 4–5.  Submitted herewith as Exhibits 1–3 are claim charts showing how the Purple®
Pillow practices the claimed design of the D092 Patent, at least one claim of the '445 Patent, and,
when used with Purple's "Adjustable Boosters," at least one claim of the '837 Patent.

397.    The '556 Mark is used in connection with at least the Purple® Pillow in United
States commerce in marketing, advertising, and related documentary materials, as well as on the
product itself.  Exemplary images showing the use of '556 Mark in connection with the Purple®
Pillow are shown below:





*See* Exs. 4–5.   Additional photographs depicting Purple's use of the '556 Mark on and in connection with the Purple® Pillow are submitted herewith in Exhibits 4 and 5.

398.   The '053 Mark is used in connection with every Purple® seat cushion in United States commerce in marketing, advertising, and related documentary materials, as well as on the product itself.   Exemplary images showing the use of '053 Mark in connection with Purple® seat cushions is shown below:

**PURPLE SEAT CUSHIONS:
YOUR NEW THRONE
AWAITS**

Shop now

## Frequently Asked Questions

How much weight can a Purple Seat Cushion support?

What are the weights and dimensions of the Purple Seat Cushions?



*See* Ex. 8.  Additional photographs depicting the use of the '053 Mark on and in connection with Purple® seat cushions are submitted herewith in Exhibit 8.

2.      **Economic Prong**

a.      **Significant Investments in Plant and Equipment in the United States**

399.    With respect to the Purple® Pillow and the Purple® seat cushions, Purple has made significant investments in plant and equipment in the United States for purposes of 19 U.S.C. § 1337(a)(3)(A).

400.    All of Purple's products, including as specific examples the Purple® Pillow and all Purple® seat cushions, are manufactured in the United States at Purple's factories in Alpine, Utah; Grantsville, Utah; and McDonough, Georgia using equipment purchased by Purple for that purpose.

401.    Purple's significant investments in plants and equipment in the United States that are directly related to the Purple® Pillow and Purple® seat cushions are further detailed in the Declaration of George Ulrich, submitted herewith as Confidential Exhibit No. 64C (hereinafter ("Ulrich Declaration").

b.      **Significant Employments of Labor and Capital in the United States**

402.    With respect to the Purple® Pillow and the Purple® seat cushions, Purple has made significant employments of labor and capital in the United States for purposes of 19 U.S.C. § 1337(a)(3)(B).

403.    All of Purple's products, including as specific examples the Purple® Pillow and all Purple® seat cushions, are manufactured by Purple employees located in the United States at Purple's factories in Alpine, Utah; Grantsville, Utah; and McDonough, Georgia.

404.    Purple's significant employments of labor and capital in the United States that are directly related to the Purple® Pillow and Purple® seat cushions are further detailed in the Ulrich Declaration, Confidential Exhibit No. 64C.

c.      **Substantial Investments in Engineering and R&D in the United States**

405.    With respect to the Purple® Pillow and the Purple® seat cushions, Purple has made substantial investments in engineering and research and development ("R&D") in the United States for purposes of 19 U.S.C. § 1337(a)(3)(C).

406.    All of Purple's products, including specifically the Purple® Pillow and all Purple® seat cushions, are designed and developed in the United States at Purple's facilities in the United States at Purple's factories in Alpine, Utah; Grantsville, Utah; and McDonough, Georgia.

407.    Purple's substantial investments in engineering and R&D in the United States that are directly related to the Purple® Pillow and Purple® seat cushions are further detailed in the Ulrich Declaration, Confidential Exhibit No. 64C.

**B.      Domestic Industry Under 19 U.S.C. § 1337(a)(1)(A)**

**1.      A Domestic Industry Exists**

408.    For purposes of Purple's Purple Trade Dress infringement and unfair competition claims in this action brought under 19 U.S.C. § 1337(a)(1)(A), and as set forth in the accompanying Ulrich Declaration, Confidential Exhibit No. 64C, a domestic industry exists related to products (such as the Purple® Pillow and Purple® seat cushions) that utilize the Purple Trade Dress and have been and are the competitive target of proposed Respondents' Purple Trade Dress infringement and unfair competition.

409.    As described herein, Purple has made significant investments in plant and equipment in the United States, including the manufacture of all its products by Purple employees located in the United States at Purple's factories in Alpine, Utah; Grantsville, Utah; and McDonough, Georgia. Purple's significant investments in plants and equipment in the United

States that are directly related to the Purple® Pillow and Purple® seat cushions are further detailed in the Ulrich Declaration, Confidential Exhibit No. 64C.

410.    As described herein, Purple has made significant employments in labor and capital in the United States, including by manufacturing all of its products by Purple employees in the United States at Purple's factories in Alpine, Utah; Grantsville, Utah; and McDonough, Georgia. Purple's significant employments in labor and capital in the United States that are directly related to the Purple® Pillow and Purple® seat cushion are further detailed in the Ulrich Declaration, Confidential Exhibit No. 64C.

411.    As described herein, Purple has made substantial investments in research and engineering in the United States, including the design and development of all its products in the United States at Purple's factories in Alpine, Utah; Grantsville, Utah; and McDonough, Georgia. Purple's substantial investments in research and engineering in the United States that are directly related to the Purple® Pillow and Purple® seat cushion are further detailed in the Ulrich Declaration, Confidential Exhibit No. 64C.

### 2.    Proposed Respondents' Unfair and Unlawful Acts Have Substantially Injured the Domestic Industry

412.    Proposed Respondents' Purple Trade Dress infringement and unfair competition has had and continues to have the effect of causing substantial injury to the domestic industry based at least on Purple's loss of sales and profits and Purple's increased marketing costs.

413.    For example, upon information and belief, Proposed Respondents' Purple Trade Dress infringement and unfair competition has led Proposed Respondents' growth in associated revenues and profits and, similarly, a loss of sales and profits for Purple, as further evidenced and explained in the Ulrich Declaration, Confidential Exhibit No. 64C.

### 3. Proposed Respondents' Unfair and Unlawful Acts Threaten to Further Substantially Injure the Domestic Industry

414.    Proposed Respondents' Purple Trade Dress infringement and unfair competition has threatened and continues to threaten further substantial injury to the domestic industry. As set forth below, the threatened substantial injury to the domestic industry is based at least on Proposed Respondents' causing of future consumer confusion, Proposed Respondents' ability to undersell Purple, and Proposed Respondents' significant production capacity.

415.    As set forth herein, proposed Respondents' Purple Trade Dress infringement and unfair competition has caused, and is likely to cause future consumer confusion, mistake, and deception as to the affiliation, connection, or association of proposed Respondents with Purple, or as to the origin, sponsorship, or approval of proposed Respondents' goods, services, or commercial activities by Purple.   Proposed Respondents' accused products are of inferior quality.   The similarity of the products, the number of different infringers, and the nature of the on-line marketing channels through which proposed Respondents are able to reach consumers and sell their accused products has damaged and will continue to damage Purple's reputation, goodwill, and brand, and deprive Purple of the ability to control the quality of products that are and will be associated with the Purple brand in the minds of consumers.

416.    For example, Proposed Respondents are primarily if not exclusively selling their products in the United States via their websites and/or prominent on-line merchants, such as Amazon, Alibaba, and the like.   Thus, proposed Respondents' accused products are being marketed, advertised, and offered for sale nationwide to every U.S. consumer with access to the internet.   By virtue of these on-line marketing activities through massive, high volume on-line platforms, proposed Respondents' infringing activities are likely to have a similarly massive

adverse impact on consumers' views of Purple's products as a result of the confusion that will inevitably follow.

417.    Further, proposed Respondents' accused products are manufactured abroad, largely in China, and upon information and belief proposed Respondents have significant foreign cost advantages.  As a result, Proposed Respondents are able to undersell Purple's products at prices that are substantially less than the prices at which Purple is selling its products, such as for example the Purple® Pillow.  The Purple® Pillow currently sells for $134.00.  *See* Ex. 4.  Proposed Respondents are selling their competing and infringing products for substantially less.

418.    On information and belief, Proposed Respondents have substantial production capacity that enables them to take advantage of any increased demand for infringing products that occurs by virtue of proposed Respondents' increasing use of on-line marketing platforms like Amazon.  As one example, Proposed Respondent Epsilon/Husdow has offered its infringing Honeycomb Hex Latex Pillow product in quantities of over 500,000 units, including price discounts for high-volume orders.



*See* Ex. 183.

419.    As set forth herein, on information and belief, Proposed Respondents' infringing products have shown rapid sales growth since entering the market and, in the absence of a remedy,

Proposed Respondents' sales and market share will continue to grow in light of their broad marketing exposure in the United States market, their underselling of Purple's products, and their substantial production capacity.

## XIII.   RELATED LITIGATION

420.   Pursuant to 19 C.F.R. § 210.12(5), Purple states that, to date, proposed Respondents' unfair methods of competition and unfair acts as detailed herein have not yet been the subject of any court or agency litigation.

## XIV.   REQUESTED RELIEF

WHEREFORE, by reason of the foregoing, Complainant Purple Innovation, LLC respectfully requests that the United States International Trade Commission:

(a)      institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to proposed Respondents' violations of Section 337 based on their unlawful importations into the United States, sales for importation into the United States, and sales after importation into the United States of articles, and/or components thereof, constituting (i) infringement of the Purple Trade Dress and unfair competition within the meaning of 15 U.S.C. § 1125(a); (ii) infringement of the ornamental design claimed in U.S. Patent No. D909,092; (iii) infringement of U.S. Trademark Registration Nos. 5,661,556 and/or 6,551,053; and/or (iv) infringement of one or more claims of U.S. Patent Nos. 10,772,445 and/or 10,863,837;

(b)      set a target date for completion of the investigation of no more than 16 months;

(c)      schedule and conduct a hearing pursuant to 19 U.S.C. § 1337(c) on the unlawful acts and, following the hearing, determine that there has been a violation of Section 337;

(d)      issue a General Exclusion Order pursuant to 19 U.S.C. § 1337(d) forbidding entry into the United States of all pillow and seat cushion articles, and/or components thereof, the importation into the United States, sale for importation into the United States, and sale after

importation into the United States of which (i) infringe the Purple Trade Dress or otherwise constitute unfair competition within the meaning of 15 U.S.C. § 1125(a); (ii) infringe the ornamental design claimed in U.S. Patent Nos. D909,092; (iii) infringe U.S. Trademark Registration Nos. 5,661,556 and/or 6,551,053; and/or (iv) infringe one or more claims of U.S. Patent No. 10,772,445; or alternatively issue a Limited Exclusion Order pursuant to 19 U.S.C. § 1337(d) forbidding entry into the United States of the same pillow and seat cushion articles, and/or components thereof, of the named proposed Respondents;

(e)   issue a Limited Exclusion Order pursuant to 19 U.S.C. § 1337(d) forbidding entry into the United States of all pillow and seat cushion articles of the named proposed Respondents the importation into the United States, sale for importation into the United States, and sale after importation into the United States of which infringe one or more claims of U.S. Patent No. 10,863,837;

(f)   issue Cease and Desist Orders pursuant to 19 U.S.C. § 1337(f) prohibiting proposed Respondents and related companies from conducting at least the following activities in the United States:  importing, selling, offering for sale, transferring, distributing, inventorying, marketing, advertising, demonstrating, and/or soliciting U.S. agents or distributors with respect to pillow and seat cushion articles, and components thereof, the importation into the United States, sale for importation into the United States, and sale after importation into the United States of which violate Section 337;

(g)   impose a bond during the 60-day period of Presidential review pursuant to 19 U.S.C. § 1337(e)(1) and (f)(1) to prevent further injury to Purple; and

(h)   grant such other and further relief as the Commission deems just and proper based upon the facts determined by the investigation and the authority of the Commission.

122

Dated:  August 5, 2022                    Respectfully submitted,


*/s/Teague I. Donahey*
Teague I. Donahey
Christopher C. McCurdy
Zachery J. McCraney
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Boise, Idaho 83702
Tel: (208) 342-5000

Timothy Getzoff
HOLLAND & HART LLP
1800 Broadway, Suite 300,
Boulder, Colorado 80302
Tel: (303) 473-2700

Paul D. Swanson
Anna van de Stouwe
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, Colorado 80202
Tel: (303) 295-8000

Counsel for Complainant
PURPLE INNOVATION, LLC

## VERIFICATION OF COMPLAINT

I, James A. Larson, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), and under penalty of perjury, that the following statements are true:

1.      I am Deputy General Counsel – IP at Purple Innovation, LLC ("Purple"), and I am duly authorized to verify this Complaint under Section 337 of the Tariff Act of 1930, as Amended ("Complaint") on behalf of Purple.

2.      I have read the Complaint and am aware of its contents.

3.      To the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, (A) the claims and other legal contentions in the Complaint are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and (B) the allegations and other factual contentions in the Complaint have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

4.      The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or any related proceeding.

I declare under penalty of perjury that the foregoing is true and correct, and that the statements made upon information and belief are believed by me to be true.

Executed the 5th day of August, 2022.

DocuSigned by:

*James Larson*

5E4DFC941A3D4DE...

James A. Larson